**STATE of Tennessee**

v.

**Sean Eric IMFELD.**

Supreme Court of Tennessee,
at Knoxville.

March 11, 2002.

---

Mark E. Stephens, District Public Defender, and Paula R. Voss and Robert C. Edwards, Assistant Public Defenders, Knoxville, Tennessee, for the appellant, Sean Eric Imfeld.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Patricia Cristil, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

The defendant entered guilty pleas to five counts of aggravated assault and was sentenced to three years for each conviction.[1] The trial court ordered three of the sentences for aggravated assault to be served consecutively, for an effective sentence of nine years. The Court of Criminal Appeals affirmed.

We granted permission to appeal to address three issues: (1) whether the trial court properly enhanced the defendant's sentences for aggravated assault on the basis that the offenses involved more than one victim, Tenn.Code Ann. § 40–35–114(3) (1997 & Supp.2001); (2) whether the trial court properly enhanced the defendant's sentences on the basis that the crimes were committed under circumstances where the potential for bodily injury to a victim was great, id. § 40–35–114(16); and (3) whether the trial court properly imposed consecutive sentences on the basis that the defendant was a dangerous offender, id. § 40–35–115(b)(4).

After reviewing the record and applicable authority, we conclude that the lower courts erred in applying the "multiple victims" and "potential bodily injury to a victim" enhancement factors, see id. §§ 40–35–114(3) and –114(16), but that a reduction in the length of the sentences is not warranted because several other valid enhancement factors were supported by the record. We also conclude that the trial court's imposition of consecutive sentences on the basis that the defendant was a dangerous offender was supported by the record. See id. § 40–35–115(b)(4). We therefore affirm the judgment of the Court of Criminal Appeals.

On July 31, 1997, a car driven by the defendant, Sean Imfeld, struck the rear of a van occupied by Jeffrey and Yvonne Hensley and their six children. As a result of the collision, Jeffrey Hensley sustained bruises to the right side of his body; Yvonne Hensley suffered abrasions and a foot injury; Jeffrey Hensley, Jr., age 16, sustained a cut to his forehead and suffered neck pain; Jamar Hensley, age 8, suffered cuts to his face; Joshua Hensley, age 5, received three cuts to his forehead; Jessica Hensley, age 4, sustained major cuts that later required skin graft surgery; and Justin Hensley, age 3, received minor bruises. The Hensleys' 8–month–old son, Jarvis, was not injured in the accident.

The defendant pled guilty to driving under the influence[2] and five counts of aggravated assault.[3] The aggravated assault counts, which charged that the defendant recklessly caused bodily injury to the victims by use of a deadly weapon, were based upon the injuries sustained by Jeffrey Hensley, Sr., Yvonne Hensley, Jeffrey Hensley, Jr., Jamar Hensley, and Joshua Hensley. There were no charges or guilty pleas based on the injuries suffered by Jessica or Justin Hensley. The plea agreement left sentencing to the trial court.

The defendant, age 30, said that he was hospitalized for a day following the accident. He could not recall the accident or

---

1. The defendant also pled guilty to one count of driving under the influence and was sentenced to 11 months and 29 days, to run concurrently with the sentences for aggravated assault.

2. Tenn.Code Ann. § 55–10–401 (1998).

3. Tenn.Code Ann. § 39–13–101 and –102(a)(2)(B) (1997 & Supp.2001).

how it occurred, and it was not until a year after the accident that he realized the extent of the injuries suffered by the Hensley children. Although the defendant acknowledged that he was arrested for a second DUI offense that occurred *after* the incident involving the Hensley family, he said that he no longer drank alcohol. John Baker, a retail sales manager at Fleet Tire Company, testified that the defendant was a reliable and honest worker who had no history of drug or alcohol problems at work. Baker, who was also a minister, testified that he counseled the defendant and that the defendant expressed remorse for the accident.

The trial court imposed a three-year sentence for each of the five offenses of aggravated assault[4] based on the application of seven enhancement factors: the defendant had a prior history of criminal convictions or criminal behavior, Tenn. Code Ann. § 40–35–114(1) (1997 & Supp. 2001); the offense involved more than one victim, *id.* § 40–35–114(3); the victims were particularly vulnerable because of age or physical or mental disability, *id.* § 40–35–114(4); the personal injuries or property damage sustained by the victims were particularly great, *id.* § 40–35–114(6); the defendant had no hesitation about committing a crime when the risk to human life was high, *id.* § 40–35–114(10);

the crime was committed under circumstances where the potential for bodily injury to a victim was particularly great, *id.* § 40–35–114(16); and the victims suffered permanent impairment of physical or mental functions as a result of the abuse, *id.* § 40–35–114(18).

The trial court also ordered three of the aggravated assault sentences to be served consecutively after finding that the defendant was a "dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." *Id.* § 40–35–115(b)(4). Thus, the effective length of the sentence was nine years.

A majority of the Court of Criminal Appeals held that the trial court properly enhanced the sentence on the basis that four of the enhancement factors were appropriate: the defendant had a prior criminal history, *id.* § 40–35–114(1); the offense involved more than one victim, *id.* § 40–35–114(3); the defendant had no hesitation about committing a crime when the risk to human life was high, *id.* § 40–35–114(10); and the offense was committed under circumstances where the potential for bodily injury to a victim was great, *id.* § 40–35–114(16). Although the court held that the trial court erroneously applied the remaining three enhancement factors,[5] it upheld

---

4. The trial court found that the defendant was a standard, range I offender and that the range of punishment for aggravated assault, a class D felony, was two to four years. *See* Tenn.Code Ann. § 40–35–112(a)(4). The trial court initially imposed the maximum sentence of four years for three of the convictions, for an effective term of 12 years. The trial court later reduced the sentences to three years, and an effective term of nine years, on motion of the defendant. *See* Tenn. R.Crim. P. 35(b) ("The trial court may reduce a sentence upon application filed within 120 days after the date the sentence is imposed....").

5. Specifically, the court held that the trial court misapplied the "particularly vulnerable" enhancement factor, *see* Tenn.Code Ann. § 40–35–114(4), and the "permanent physical or mental impairment" enhancement factor, *see* Tenn.Code Ann. § 40–35–114(18). The intermediate court also held that the trial court erred in enhancing *all* of the sentences on the basis that the injury or damage to the victims were particularly great, *see* Tenn.Code Ann. § 40–35–114(6); instead, the court determined that this factor should only have been used to enhance the sentence for the offense against Jamar Hensley.

the length of the sentences. In addition, the court affirmed the trial court's imposition of consecutive sentencing.

We granted the defendant's application for permission to appeal to determine whether the trial court properly enhanced the sentences for aggravated assault on the basis that the offenses involved more than one victim, *id.* § 40–35–114(3), and that the crimes were committed under circumstances where the potential for bodily injury to a victim was great, *id.* § 40–35–114(16). We also granted review to determine whether the trial court properly imposed consecutive sentences on the basis that the defendant was a dangerous offender, *id.* § 40–35–115(b)(4).

## ANALYSIS

### Sentencing Principles

■ We begin our analysis by reviewing the familiar principles that govern criminal sentencing under Tennessee law. In imposing a sentence, the trial court must first determine the applicable punishment range based on the severity of the offense and the defendant's prior convictions, if any. *See* Tenn.Code Ann. § 40–35–112 (1997 & Supp.2001). The sentencing classifications and the ranges of punishment are established by the legislature. *Id.; see also State v. Poole,* 945 S.W.2d 93, 95 (Tenn.1997).

■ After determining the applicable range of punishment, the court must consider the following: the evidence, if any, received at the trial and the sentencing hearing; the pre-sentence report; the principles of sentencing and arguments as to sentencing alternatives; the nature and characteristics of the criminal conduct involved; the evidence and information regarding statutory enhancement and mitigating factors; and any statement made by the defendant in his own behalf. *See*

Tenn.Code Ann. § 40–35–210(b) (1997 & Supp.2001).

Where there are enhancement factors, but no mitigating factors, in the record for a class B, C, D, or E felony, the trial court may increase the sentence above the minimum within the applicable range. *Id.* § 40–35–210(d). Where there are both enhancement *and* mitigating factors in the record for a class B, C, D, or E felony, the trial court must begin with the minimum sentence within the range, increase the sentence within the range as appropriate for the enhancement factors, and reduce the sentence within the range as appropriate for the mitigating factors. *Id.* § 40–35–210(e).

■ The determination of whether an enhancement factor is applicable must be undertaken on a case-by-case basis. *State v. Winfield,* 23 S.W.3d 279, 283 (Tenn. 2000). By statute, an enhancement factor must be appropriate for the offense and not an essential element of the offense. Tenn.Code Ann. § 40–35–114 (1997 & Supp.2001). These limitations are intended to exclude enhancement factors that are not relevant to the offense or that are based on facts used in proving the offense. *See Poole,* 945 S.W.2d at 95; *State v. Jones,* 883 S.W.2d 597, 601 (Tenn.1994).

■ On appeal, we must review the length, range, or manner of service of a sentence *de novo* with a presumption that the determinations made by the trial court were correct. Tenn.Code Ann. § 40–35–401(d) (1997). To facilitate appellate review, the trial court " 'must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the

sentence.'" *Poole*, 945 S.W.2d at 96 (quoting *State v. Jones*, 883 S.W.2d 597, 601 (Tenn.1994)). If the trial court has failed to comply with the statutory principles of sentencing, our review is *de novo* without a presumption of correctness. *Id.*

### Application of Enhancement Factors

#### *Multiple Victims*

■ The defendant argues that the trial court erred in enhancing the sentences on the basis that the "offense[s] involved more than one (1) victim" because each offense of aggravated assault necessarily involved a specific, named victim. *See* Tenn.Code Ann. § 40–35–114(3) (1997 & Supp.2001). The State agrees that application of the "multiple victims" enhancement factor was not appropriate in this case.

■ A majority of the Court of Criminal Appeals upheld the trial court's use of this enhancement factor on the basis that there were victims in the accident on behalf of whom no aggravated assault charges were brought, *i.e.*, Jessica and Justin Hensley. In concurring separately, Judge Joseph M. Tipton wrote that the "multiple victims" enhancement factor was not appropriate because each charge of aggravated assault involved recklessly causing bodily injury *to a named person* by use of deadly weapon. *See id.* § 39–13–102(a)(2)(A). Judge Tipton reasoned that application of the enhancement factor, which specifically refers to "the offense," *see id.* § 40–35–114(3), was not appropriate because "there cannot be multiple victims for any one count referring to a particular person."

We believe that Judge Tipton's reasoning is more persuasive and is supported by our recent decision in *State v. Lewis*, in which we held that the "multiple victims" factor was applicable to enhance the defendant's sentence for aggravated arson. 44 S.W.3d 501, 507–08 (Tenn.2001).[6] We observed first that the enhancement factor did not duplicate the elements of the offense:

> [A]ggravated arson requires but one person to be present in the structure. Indeed, an aggravated arson can occur in the absence of a "victim" as defined above. Only a person's presence is required. There is no requirement of injury or death to the person who is present, and there is no requirement that property actually be destroyed. Therefore, none of the facts used to establish the essential elements of aggravated arson are used to establish the multiple victim enhancement factor.

*Id.* at 508. We then concluded that the enhancement factor was appropriate for the offense of aggravated arson:

> We find the "multiple victim" enhancement factor to be appropriate for this offense. *Use of the "multiple victim" enhancement factor is well-suited to the aggravated arson statute, which does not permit multiple convictions in spite of the fact that multiple persons were victimized by the fire.* While [the defendant] could not be convicted of multiple counts of aggravated arson ..., his sentence may reflect that he victimized multiple persons.

*Id.* (emphasis added).

■ In contrast to aggravated arson, separate convictions for aggravated assault may be obtained based upon specif-

<hr>

6. We said that a person or entity is a "victim" under Tenn.Code Ann. § 40–35–114(3), when that person or entity "is injured, killed, had property stolen, *or had property destroyed by* the perpetrator of the crime." *State v. Lewis*, 44 S.W.3d at 508 (quoting *State v. Raines*, 882 S.W.2d 376, 384 (Tenn.Crim.App.1994)).

ic, named victims. In this case, for example, each offense of aggravated assault involved recklessly causing bodily injury *to a named person* by use of deadly weapon. *See* Tenn.Code Ann. § 39–13–102(a)(2)(A) (1997 & Supp.2001). The statutory language of the "multiple victims" factor, however, limits its application to "an *offense*" involving "more than one (1) victim." *Id.* § 40–35–114(3) (emphasis added). In short, there cannot be multiple victims for any one offense of aggravated assault committed against a specific, named victim. Moreover, application of the factor on the basis that there were individuals in the accident on behalf of whom no charges were filed is simply inconsistent with the statutory language of Tenn.Code Ann. § 40–35–114(3). *Compare Lewis,* 44 S.W.3d at 508. Accordingly, we hold that the lower courts erred in applying the "multiple victims" enhancement factor to the offenses of aggravated assault in this case.[7]

### Potential for Bodily Injury to a Victim

■ The defendant argues that the trial court erred in enhancing each sentence for aggravated assault on the basis that "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great." Tenn. Code Ann. § 40–35–114(16) (1997 & Supp. 2001). The defendant contends that this enhancement factor, like the "multiple victims" factor, is not appropriate where the offense involves a specific, named victim. The State maintains that the enhancement factor was properly applied based on the presence of other individuals involved in the accident.

A majority of the Court of Criminal Appeals held that the "potential for bodily injury" factor was properly applied to enhance the sentences for aggravated assault because other individuals were involved in the accident and injured. *See State v. Sims,* 909 S.W.2d 46, 50 (Tenn.Crim.App. 1995) (holding that Tenn.Code Ann. § 40–35–114(16) was applicable to enhance sentence for aggravated assault). Concurring separately, Judge Tipton wrote that the factor was not applicable because each offense involved bodily injury to a specific, named victim. *See State v. Bingham,* 910 S.W.2d 448, 452 (Tenn.Crim.App.1995) (holding that Tenn.Code Ann. § 40–35–114(16) was not applicable to enhance sentence for aggravated assault).

■ Once again, we believe that Judge Tipton's analysis reflects the better reasoned approach to the application of the "potential for bodily injury" enhancement factor. The offenses of aggravated assault in this case required proof that the defendant recklessly caused bodily injury to a named victim with a deadly weapon. Tenn.Code Ann. §§ 39–13–101(a) and 102(a)(2)(A) (1997 & Supp.2001). The statutory language of the enhancement factor provides that "[t]he crime was committed under circumstances under which the potential for bodily injury to *a victim* was great." *Id.* § 40–35–114(16) (emphasis added). In effect, elements of an aggravated assault against a specific, named victim are reflected in the statutory language of the enhancement factor, thus rendering its application to enhance the sentence inappropriate. There is nothing in the statutory language of the enhancement factor to indicate that it applies to potential victims or that it applies simply because the offense was committed in the presence of other individuals.

---

7. Cases in which the "multiple victims" factor has been applied to enhance sentences for aggravated assault, as in the present case, are hereby overruled on this basis. *See State v. Norris,* 874 S.W.2d 590, 601 (Tenn.Crim.App. 1993).

Additional support for our interpretation of Tenn.Code Ann. § 40–35–114(16) is found by its comparison to the enhancement factor in Tenn.Code Ann. § 40–35–114(10), which states that "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." The enhancement factor in Tenn.Code Ann. § 40–35–114(10) is broadly written to include "risk to human life," and it does not contain the restrictions to "the crime" and "a victim" that are contained in Tenn.Code Ann. § 40–35–114(16). Indeed, in the present case it is the "risk to human life" factor that accounts for the fact that other individuals were involved in the accident and endangered by the defendant's actions. In short, the statutory distinctions must be given proper effect to determine which factor is applicable or whether both are applicable. *See Lewis,* 44 S.W.3d at 508 (finding both enhancement factors (10) and (16) applicable to the facts of the aggravated arson).

### *Length of the Sentences*

To reiterate, we conclude that the trial court erred in enhancing the sentences for aggravated assault on the basis of Tenn.Code Ann. §§ 40–35–114(3) and – 114(16). We must now determine whether the elimination of these enhancement factors warrants a reduction in the length of the sentences. *See Winfield,* 23 S.W.3d at 284. Such a determination requires review of the evidence supporting any remaining enhancement factors, as well as the strength and substance of the evidence supporting any mitigating evidence. *Id.* An appellate court should not refuse to modify a sentence simply because one or more enhancement factors remain supported by the record.

In this case, we agree with the Court of Criminal Appeals' conclusion that several other enhancement factors were supported by the record: the defendant's prior criminal history, consisting of two misdemeanor drug offenses and a driving under the influence offense that occurred *after* the offenses in this case; the personal injuries inflicted upon one of the victims, Jamar Hensley, were particularly great; and the defendant had no hesitation about committing a crime when the risk to human life was high. *See* Tenn.Code Ann. §§ 40–35–114(1), (6), and (10) (1997 & Supp.2001). We also agree that the trial court gave proper consideration to mitigating evidence such as the defendant's minimal criminal record, willingness to make amends, and troubled life.

We conclude, however, that a reduction in the length of the defendant's sentences for aggravated assault is not appropriate. First, the facts that purported to support the "multiple victims" and "potential bodily injury" factors, *i.e.,* the presence of and injuries to other individuals involved in the accident, overwhelmingly supported the proper application of the "risk to human life" factor set forth in Tenn.Code Ann. § 40–35–114(10). Moreover, the range of punishment in this case was two to four years and the trial court imposed three-year sentences that fell precisely in the middle of the range. We believe that the three-year sentences were entirely appropriate given the evidence of the remaining enhancement factors and the mitigating evidence. *See Winfield,* 23 S.W.3d at 284.

### Consecutive Sentencing

The defendant argues that the trial court erred in ordering three of the sentences for aggravated assault to run consecutively on the basis that he was a "dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn.Code Ann. § 40–35–115(b)(4) (1997).

The State maintains that the trial court made the appropriate findings to support consecutive sentencing and that the findings were supported by the record.

When a defendant is convicted of one or more offenses, the trial court must determine whether the sentences shall be served concurrently or consecutively. *See id.* § 40–35–115(b). In addition to the specific criteria in Tenn.Code Ann. § 40–35–115(b),[8] consecutive sentencing is guided by the general sentencing principles providing that the length of a sentence be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." *Id.* §§ 40–35–102(1) and –103(2).

As noted, the trial court imposed consecutive sentencing in this case on the basis that the defendant is a dangerous offender pursuant to Tenn.Code Ann. § 40–35–115(b)(4). Of this statutory provision, this Court has said:

> Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; consequently, the provisions of Section 40–35–115 cannot be read in isolation from the other provisions of the Act. *The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to pro-*

*tect the public from further criminal acts by the offender.*

State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn.1995) (emphasis added). The need for the additional findings before imposing consecutive sentencing on the basis of the "dangerous offender" provision arises, in part, from the fact that this category "is the most subjective and hardest to apply." *State v. Lane,* 3 S.W.3d 456, 461 (Tenn. 1999).

In *Wilkerson,* the defendant was convicted of vehicular homicide, four counts of vehicular assault, and driving on a revoked license. The trial court, finding that the defendant was a dangerous offender, imposed consecutive sentencing pursuant to Tenn.Code Ann. § 40–35–115(b)(4). This Court, however, remanded the case for resentencing because the trial court did not expressly find that consecutive sentences were reasonably related to the severity of the offenses and necessary to protect the public against further criminal conduct. *Wilkerson,* 905 S.W.2d at 938–39.

In contrast to *Wilkerson,* the trial court in this case made appropriate factual findings in support of its order requiring consecutive sentencing. With regard to the first *Wilkerson* factor, for example, the trial court found that the sentences were appropriate for the severity of the offenses:

> [The defendant] has not sought out [alcoholics anonymous], even though it is within a possible distance.
>
> Mr. Baker has sought to find ways of helping ... but unfortunately [the defendant] has not. And I have a problem with that. And the problem I have with that is [the defendant] has sort of turned

---

**8.** The statutory criteria for imposing consecutive sentencing are codifications of this Court's decisions in *Gray v. State,* 538 S.W.2d 391 (Tenn.1976), and *State v. Taylor,* 739 S.W.2d 227 (Tenn.1987).

a blind eye to this. He knew that there was bodily injury. He knew that there was severe injury. He knew what the charges were. He didn't look to find out exactly what he had done, and what he needed to do to correct it. He didn't seek the help that he should seek.

* * *

There are three children involved in this accident.... For the grace of God ... the child that was thrown out of the vehicle, had she landed on her head, might be dead, or ... impaired ... I cannot justify ... giving a sentence that is not to serve ... [consecutively], in light of the severity of the injuries in this case.

Similarly, the record reflects that the trial court considered the second prong of *Wilkerson* and found that the defendant was a danger to the community:

[T]he fact that [the defendant] has picked up new charges ..., not once, but twice, both driving charges, one of which, at least, he's alleged to committed a driving under the influence, concerns this Court mightily.

* * *

[The defendant] took no steps of his own to attempt to correct [his alcohol problem], and indeed, wound up with other charges.

* * *

And so that the record is clear, because [the] appellate court will get this record, it's the court's belief that [the defendant] is, as he sits here today, while extremely remorseful, and never intentionally would have done any of this, unable to control his behavior in such a way that he cannot be safe in the outside community.

The trial court therefore concluded that the defendant "is a danger to the community under his present circumstances, and was at the time of the commission of this offense."

To summarize, the record reveals that the trial court made extensive factual findings consistent with this Court's decision in *Wilkerson*, which satisfy the statutory criteria for consecutive sentencing. Accordingly, we agree with the Court of Criminal Appeals that the record supports the trial court's decision to order three of the five sentences for aggravated assault to be served consecutively.

## CONCLUSION

After reviewing the record and applicable authority, we conclude that the lower courts erred in applying the "multiple victims" and "potential bodily injury to a victim" enhancement factors, *see* Tenn. Code Ann. §§ 40–35–114(3) and –114(16) (1997 & Supp.2001), but that a reduction in the length of the sentences is not warranted because several other valid enhancement factors were supported by the record. We also conclude that the trial court's imposition of consecutive sentences on the basis that the defendant was a dangerous offender was supported by the record, *see id.* § 40–35–115(b)(4). Accordingly, we affirm the judgment of the Court of Criminal Appeals. As it appears the defendant is indigent, costs of appeal are taxed to the State.