# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 21, 2003

## STATE OF TENNESSEE v. ROBIN A. CONNER

### Direct Appeal from the Circuit Court for Blount County
### No. C-13456    D. Kelly Thomas, Jr., Judge

### No. E2002-01075-CCA-R3-CD
### June 4, 2003

The defendant, Robin A. Conner, pled guilty to robbery, and the Blount County trial court sentenced her to three years' incarceration as a Range I standard offender. The defendant appeals the trial court's denial of alternative sentencing. Upon review of the record and the applicable law, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); Raymond Mack Garner, District Public Defender; and Stacey D. Nordquist, Assistant District Public Defender (on appeal and at hearing), for the appellant, Robin A. Conner.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Michael L. Flynn, District Attorney General; and John Anderson Bobo, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant entered a guilty plea to simple robbery for "snatching" a purse from Marguerite White, an eighty-year-old woman, on March 6, 2001. The trial court sentenced the defendant to three years' incarceration as a Range I standard offender. The defendant contests the denial of alternative sentencing.

## I. SENTENCING HEARING

The defendant testified that on March 6, 2001, while in Alcoa, Tennessee, she was with people she "shouldn't have been around," was not taking her medication for her mental health problems, and was using cocaine. While driving her vehicle, she saw Ms. White, recognized her as a former neighbor, and stopped to speak to her. The defendant asked Ms. White for $20.00, and

Ms. White informed her that she did not have any money. The defendant testified she "snapped," took Ms. White's purse, and fled. The defendant stated she did not intend to injure Ms. White and, in fact, did not injure her. She further stated that before she fled, she observed that Ms. White "might have been getting up"; however, the defendant maintained she did not hit Ms. White.

The defendant testified she intended to use the money in Ms. White's purse to purchase food, gas, and cocaine. However, she only found $27.00 in the purse. The defendant stated that upon purchasing gas and a sandwich, there was not enough of the money remaining to purchase cocaine. She then threw the purse in the trash. The defendant testified a police detective later came to her residence, and she told him where the purse could be located.

The defendant testified that at the time of the hearing, she was forty years old. She stated she suffers from high blood pressure, schizophrenia, depression, and psychosis. She takes medication for high blood pressure, as well as Prozac, Trazodone, and Zyprexa for her mental health problems. She acknowledged that a doctor examined her, found her competent to stand trial, and concluded the insanity defense was unavailable.

The defendant stated that in 1989, she received drug rehabilitation treatment and remained drug-free for ten years. When she moved to Alcoa in 1999, she began to use crack cocaine and marijuana. The defendant maintained she has not used any drugs since the incident. A drug screen conducted shortly before the sentencing hearing was negative.

The defendant testified she has had custody of Brittany Hudson, a sixteen-year-old girl, since Brittany was five years old. She stated Brittany and her mother do not get along due to her mother's alcohol addiction. According to the defendant, Brittany attends school regularly and makes good grades. The defendant stated Brittany, as well as the defendant's sister and a friend, now help her with her medication.

The defendant testified she dropped out of high school in order to obtain a job and was unable to obtain a GED due to her mental illness. She stated she is unemployed and has been on disability since the 1980's due to her mental health problems. She further stated that in the 1980's, she worked as a teacher's assistant for the Tennessee Parent Service School for the Deaf and that in the 1990's, she was a nurse's assistant.

The defendant acknowledged that in 1986, she was arrested for driving under the influence and simple possession of marijuana. The presentence report reveals that she was convicted of these misdemeanor charges in 1987. The defendant stated she had no other convictions. She stated she was willing to attend classes and take drug tests as conditions of community corrections, and she would stay away from people who "don't mean [her] any good."

Brittany Hudson testified that at the time of the hearing, she was sixteen years old and a junior in high school. She stated that since she was five years old, she lived with the defendant and her mother; however, her mother moved out "a couple of years ago." Brittany remained with the defendant because her mother was an alcoholic. She stated the defendant treats her "like a

daughter," but if the defendant is incarcerated, she would live with her mother. She also stated she does well in school and attends regularly.

Brittany testified she knew the defendant was not taking her medication when the robbery occurred. She stated that when the defendant is taking her medication, she is more alert, and she appears to be indifferent when she is not taking her medication. Brittany testified she, her mother, and the defendant's sister now ensure the defendant takes her medication.

The defense also presented letters of recommendation from the Tennessee Infant Parent Services School and the defendant's pastor. A letter from Peninsula Outpatient Center confirmed that the defendant suffers from schizophrenia, depression and psychosis for which she takes medication. The letter further stated she was "currently stable" on these medications.

Although Ms. White did not testify at the hearing, she submitted a victim impact statement. In the statement, Ms. White maintained the defendant took her purse, which contained her driver's license, credit cards, and $150.00, and pushed her on the ground. As a result of the fall, Ms. White has severe pain on the left side of her body and in her left hand. Since the offense, she is frightened and depressed, has difficulty sleeping, and remained inside her residence for several months. Ms. White stated she now takes nerve medication and that her arthritic condition has become more complicated.

## II. TRIAL COURT'S FINDINGS

The trial court sentenced the defendant to three years' incarceration as a Range I standard offender. It stated the defendant was a presumed candidate for alternative sentencing because she was convicted of a Class C felony as a Range I offender. The trial court examined the enhancement factors and noted the defendant's history of illegal drug use, the victim's vulnerability due to her age, and the commission of the offense under circumstances where potential for bodily injury to the victim was great. *See* Tenn. Code Ann. § 40-35-114(1), (4), (16).[1]

The trial court then made the following comments:

And in looking at all that, what it comes down to, Ms. Conn[e]r, is that you have a history of emotional and mental problems and how well you do is depending on, to a large degree, whether or not you take your medication. And there's no one to make certain that you take it other than yourself. You have help from some people, which is good.

---

[1]Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). This is listed as factor (1), thus renumbering the previous factors as (2) through (23). *See* Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114 (1997).

If you go off your medication and start using drugs, that would be one thing, if that was the extent of it. Then I would think, well, then you're only likely to harm yourself, and we could have a violation hearing and I could take some steps to see that you didn't use drugs anymore and try to put you in some sort of treatment and whatever, and I would think that you were treatable in the community.

But what makes this case different from that is, is that you have already demonstrated that if you are not on your medication and are using crack that you don't just stop with using crack. If you can't get crack, you'll commit a violent crime to get some money to try to get some. And that creates a risk of danger that I think is not treatable in the community. And for that reason, I think the presumption in favor of alternative sentencing has been rebutted.

## III. STANDARD OF REVIEW

A defendant's sentence is reviewed by the appellate courts *de novo* with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). For this presumption to apply to the trial court's actions, there must be an affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the trial court does not comply with statutory sentencing provisions, our review of the sentence is *de novo* with no presumption the trial court's determinations were correct. State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000).

## IV. COMMUNITY CORRECTIONS

The defendant contends the trial court erred in imposing incarceration and denying community corrections. Based upon our examination of the record and the trial court's comments, we agree with the defendant's contention.

## A. Community Corrections Generally

The Community Corrections Act establishes a program of community-based alternatives to incarceration for certain eligible offenders. *See* Tenn. Code Ann. § 40-36-103. A defendant is eligible for participation in a community corrections program if the defendant satisfies several minimum eligibility criteria set forth at Tennessee Code Annotated section 40-36-106(a)(1)-(6). The Act does not provide that all offenders who meet these requirements are entitled to such relief. State v. Grandberry, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990).

"[A]n offender who does not meet the minimum criteria under Tenn. Code Ann. § 40-36-106(a) *and* is considered unfit for probation due to substance abuse or mental problems may still be eligible for community corrections under Tenn. Code Ann. § 40-36-106(c)." State v. Grigsby, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997) (emphasis in original). However, before a defendant may be sentenced pursuant to the special needs provision of section 106(c), he or she must be found statutorily eligible for probation. *Id.*; State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989).

The trial court must also find that: (1) the offender has a history of chronic alcohol abuse, drug abuse, or mental health problems; (2) these factors reasonably related and contributed to the offender's criminal conduct; (3) the identifiable special need(s) are treatable; and (4) the treatment could be best served in the community rather than a correctional institution. Grigsby, 957 S.W.2d at 546-47; State v. Boston, 938 S.W.2d 435, 439 (Tenn. Crim. App. 1996).

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also* State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

## B. Analysis

The defendant was convicted of simple robbery, a Class C felony, and sentenced to three years as a Range I standard offender. Therefore, she is presumed to be a favorable candidate for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6). Furthermore, she is a statutorily eligible candidate for probation because her sentence was less than eight years. *See* Tenn. Code Ann. § 40-35-303(a).

We note that the defendant was convicted of robbery, which is a crime against a person. *See* Tenn. Code Ann. § 39-13-401(a). Therefore, the defendant is ineligible for community corrections under Tennessee Code Annotated section 40-36-106(a). However, the defendant qualifies for consideration of community corrections under the special needs provision. *See* Tenn. Code Ann. § 40-36-106(c).

The proof presented at the sentencing hearing established that the defendant has a history of drug abuse and mental health problems. The defendant committed the offense when she ceased taking her medication for mental illness and used cocaine. The defendant testified she has since resumed taking medication for her mental health problems, and Brittany Hudson testified she, her mother, and the defendant's sister now take steps to ensure the defendant is taking her medication. The defendant underwent drug rehabilitation treatment in 1989 and remained drug-free for approximately ten years. A drug screen taken shortly before the date of the sentencing hearing did not detect any drugs in the defendant's system. Although the defendant has two prior misdemeanor convictions, these convictions occurred in 1987, approximately fourteen years prior to the present offense. Based upon these circumstances, we conclude the defendant meets the four criteria set out in Grigsby, *see* 957 S.W.2d at 546-47, and is a proper candidate for community corrections pursuant to the special needs provision. *See* Tenn. Code Ann. § 40-36-106(c).

Accordingly, we reverse the judgment of the trial court and remand for entry of an order sentencing the defendant to community corrections and for consideration of any special conditions which the trial court may deem appropriate.

_____
JOE G. RILEY, JUDGE