# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 1, 2005

## STATE OF TENNESSEE v. GEORGE HAMPTON

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 03-01711,18    Joseph B. Dailey, Judge**

---

**No. W2004-01248-CCA-R3-CD  - Filed July 14, 2005**

---

Following a jury trial, Defendant was found guilty in case No. 03-01711 of three counts of aggravated robbery, Class B felony, involving victims Henry Skelton, Mark Mears, and John Norris, and one count of aggravated assault, a Class C felony, involving victim Myron Raymond.  The trial court sentenced Defendant as a Range III, persistent offender, to thirty years for each aggravated robbery conviction and fifteen years for the aggravated assault conviction.  Defendant was found guilty in case No. 03-01718 of one count of especially aggravated robbery, a Class A felony, of Dr. Charles White, and the trial court sentenced Defendant to sixty years as a Range III, persistent offender, for this offense.  The trial court ordered Defendant's sentences in case No. 03-01711 to be served consecutively to each other and consecutively to his sentence in case No. 03-01718, for an effective sentence of one hundred and sixty-five years.  On appeal, Defendant does not challenge the sufficiency of the convicting evidence.  Defendant argues, however, that the trial court's application of enhancement factors in determining the length of his sentences violated his Sixth Amendment right to trial by jury.  Defendant also argues that the trial court erred in imposing consecutive sentencing.  After a thorough review of the record, we affirm the judgments of the trial court, and the imposition of consecutive sentencing.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender; Garland Erguden, Assistant Public Defender; and Trent Hall, Assistant Public Defender, Memphis, Tennessee, for the appellant, George Hampton.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; William L. Gibbons, District Attorney General; Amy Weirich, Assistant District Attorney General; and Steve Jones, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Judy Murphy, a nurse with the Memphis Surgery Center, was feeding some stray cats outside the Center around 6:15 a.m on July 30, 2002. She saw Dr. Charles White drive into the parking lot. Dr. White started walking toward the Center, and Ms. Murphy saw two men behind him, one of whom carried a shotgun. The man with the gun said, "Where do you think you are going, old man." Dr. White began to run. He tripped and fell face forward onto the pavement. Both men leaned down to search through Dr. White's pockets.

Ms. Murphy ran toward the Center. Candy Stidum opened the locked door, and Ms. Murphy was able to get into the Center just as the man with the gun reached the door. The man pounded on the door with his gun and pointed the weapon at Ms. Stidum, who was behind the glass panel. Another nurse in the Center called 911. Ms. Murphy and Ms. Stidum later identified Defendant as the man who carried the gun during the robbery.

John Norris, Henry Skelton, Mark Mears, and Myron Raymond had gathered in the parking lot of a Steak and Ale Restaurant around 6:15 a.m. on July 30, 2002, to collect the newspapers they would later deliver throughout the city. Two men drove up in a late-model, gray automobile. Mr. Raymond identified Defendant as the driver of the vehicle. Defendant's car window was down. Mr. Norris said that Defendant pulled a stocking mask over his face, pointed a sawed-off shotgun out of the window and told him and Mr. Skelton to hand over their wallets. Defendant stuck his hand out of the window, and Mr. Skelton and Mr. Norris handed him their wallets.

The passenger with Defendant, whom Mr. Raymond and Mr. Mears later identified as Anthony Wallace, exited the vehicle and approached Mr. Mears, demanding money. Mr. Wallace grabbed some keys and a pager from Mr. Mears' pockets and then began hitting Mr. Mears. Mr. Raymond rushed to Mr. Mears' assistance and pulled Mr. Wallace away from him. Mr. Wallace went over to the gray car and grabbed the shotgun from Defendant. The three men began circling Mr. Mears' truck as Mr. Wallace yelled that he was going to kill Mr. Mears. In the meantime, Defendant was having trouble starting the gray car, and Mr. Wallace ordered Mr. Mears to hand over the keys to his truck. The gray car started, however, and Defendant and Mr. Wallace drove away. Mr. Skelton said he thought that the license plate number of the gray car was HVY 647.

Later that day, around 4:30 p.m., Officer Michael Jackson received information that a car matching the description of the vehicle used in the early morning robberies was parked at 575 Williams Street. Officer Jackson parked about five hundred feet from the house. Twenty minutes later, a man came out of the house and drove away in the gray car. The license plate number of the gray car was HVY 847. Officer Jackson radioed that the vehicle was moving and followed the car up Williams Street until the driver turned into an alley. A patrol car entered the alley from the other end and blocked the car's exit. Officer Jackson identified Defendant as the driver of the vehicle.

On August 1, 2002, Officer Jackson was at the Greyhound Bus Terminal picking up a family member when he spotted Mr. Wallace sitting in the waiting room. Mr. Wallace had a one-way ticket to Buffalo when he was apprehended.

The proof showed that David White was robbed at 12:45 a.m. on July 30, 2002, in the parking lot of his place of employment. He said that a car pulled into the parking lot as he was walking toward his vehicle. The car stopped, and the driver stuck a shotgun out of the window. The passenger got out of the car and took Mr. White's wallet from his pocket. The driver yelled, "Anthony, just get his wallet, just get his wallet, Anthony." Mr. White later identified Defendant as the driver of the vehicle.

Officer Kevin M. Shaffer testified that he found one 12-gauge live shotgun shell wrapped in a Kleenex in the front seat of Defendant's car.

Sergeant Bart Ragland testified that the Memphis Surgery Center and the Steak and Ale at which the offenses took place were less than a mile apart. Sergeant Ragland said that some of Dr. White's personal belongings were found in a garbage can in the house located on Williams Street after Defendant was transported to the police station. Sergeant Ragland read Defendant his Miranda rights at 7:57 p.m. on July 30, 2002. He said that Defendant was cooperative, but he told Sergeant Ragland that he did not want to talk that night because he was tired. Sergeant Ragland said he decided to wait until the next day to interview Defendant. The following evening, Defendant stated that he participated in Dr. White's robbery, but he denied carrying the shotgun. He said that it was Mr. Wallace's idea to rob Dr. White, and Mr. Wallace carried the weapon during the commission of the offense. Defendant said that he was driving a gray car which he had purchased for two rocks of cocaine. Defendant said that the shotgun was unloaded because he did not want anyone to get hurt during the robbery.

Immediately after this statement, Defendant gave a statement detailing his participation in the robberies at the Steak and Ale Restaurant. Once again, Defendant said that the robberies were Mr. Wallace's idea, and Mr. Wallace, not Defendant, carried the shotgun.

Defendant testified in his own behalf at the trial. During the trial and prior to Defendant testifying, the trial court held a hearing on Defendant's motion to suppress the numerous statements he gave to the police after his arrest on July 30, 2002. The trial court ruled that Defendant's statements concerning Dr. White's robbery and the robberies of the men at the Steak and Ale Restaurant were admissible. The trial court ruled Defendant's statements concerning his participation in five other robberies on July 30, 2002, were inadmissible, but cautioned Defendant that the other statements might be admissible if he testified inconsistently with his prior statements or mentioned the other robberies during his testimony.

Defendant testified that he spent the night of July 29, 2002 with a woman whom he had just met, and then went to visit an elderly gentleman the following morning. Some time that morning, Defendant went to a house on Williams Street which Defendant referred to as a "crack house."

Defendant said he smoked some marijuana and took an Ecstacy pill. Mr. Wallace stopped by the house, and he and Defendant argued because Mr. Wallace had given Defendant's sixteen-year-old daughter a sexually transmitted disease.

After Mr. Wallace left, two men arrived at the house and asked if anyone wanted to buy the tires from a stolen car. One of the men was carrying a gun. Defendant bought the car for two rocks of cocaine. He laid down for a while and then went to find someone to help him take the tires off the gray car. Defendant said he was driving down the alley when he was stopped by police officers.

Defendant said that he did not want to talk to the police on July 30, 2002, because he was still feeling the effects of the drugs he had consumed that day, and he was tired. Defendant said he called his brother who told him that Mr. Wallace and another man had called Crime Stoppers about Defendant's involvement in the robberies. Defendant decided to talk to the police in order to get Mr. Wallace into trouble.

Defendant said that he could not have committed the robberies that occurred on July 30, 2002, within the time frame described by the witnesses. Defendant said that the newspaper said that Charles Liberto was robbed at 6:10 a.m., Dr. White at 6:15 a.m., and the men at the Steak and Ale Restaurant at 6:20 a.m. Defendant also challenged the accuracy of the witnesses' physical descriptions of him.

On cross-examination, the State introduced Defendant's statements admitting to his participation in the following robberies, all of which occurred on July 30, 2002: Kennedy Anthony at 12:25 a.m., Rodney Peterson at 2:15 a.m., Ray Penno at 2:50 a.m., Donald Allen at 4:20 a.m., and Charles Liberto at 6:12 a.m. All five men were robbed at gunpoint. Defendant denied that he participated in the robberies. He said his only purpose in talking to the investigating officers was to implicate Mr. Wallace in the offenses. Defendant admitted that it was his signature and initials on each of the statements, but he said that Sergeant Ragland told him what details to write down. Defendant said the shotgun belonged to one of the men who sold him the gray car, and Defendant claimed that these men were the perpetrators of the offenses.

## II. Sentencing Issues

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. *Id.* § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. *Id*. §§ 40-35-102, -103, and -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

A persistent offender is sentenced within the applicable Range III, or between ten and fifteen years for a Class C felony, between twenty and thirty years for a Class B felony, and between forty and sixty years for a Class A felony. Tenn. Code Ann. §§ 40-35-107(c) and 40-35-112(c). In calculating the sentence for a Class C or a Class B felony conviction, the presumptive sentence is the minimum of the range if there are no enhancement or mitigating factors. *Id.* § 40-35-210(c). In calculating the sentence for a Class A felony conviction, the presumptive sentence is the midpoint of the range if there are no enhancement or mitigating factors. *Id.* If there are enhancement but no mitigating factors, the trial court may set the sentence above the presumptive sentence for the range, but still within the range. *Id.* § 40-35-210(d). If both enhancing and mitigating factors are present, the trial court must start at the presumptive sentence for the range, enhance the sentence within the range as appropriate for the enhancing factors, and then reduce the sentence as appropriate for the mitigating factors. *Id.* § 40-35-210(e). If there are mitigating but no enhancement factors present for a Class A felony, then the trial court may set the sentence either at the midpoint of the sentencing range, or below the midpoint. *Id.* § 40-35-210(d).

At the sentencing hearing, the State introduced the pre-sentence report and copies of Defendant's prior judgments of conviction which include the following felony offenses: three counts of grand larceny, a Class D felony; two counts of attempt to sell cocaine, a Class C felony; one count of possession of cocaine of less than 0.5 grams with intent to sell, deliver or manufacture, a Class C felony; two counts of receiving stolen property valued at over $200, a Class D felony; and one count of theft of property over $1,000 and under $10,000, a Class D felony. In addition, Defendant has numerous misdemeanor convictions for driving violations, unlawful possession of a weapon, failure to appear, and possession of an automobile with an altered serial number. Defendant was found in violation of parole in 1990 and again in 1995. Based on Defendant's prior criminal history, the trial court classified Defendant as a Range III, persistent offender, for purposes of sentencing, and Defendant does not challenge this classification. *See* Tenn. Code Ann. 40-35-107(a)(1).

In determining the length of each of Defendant's sentences the trial court considered the following enhancement factors: factor (2), Defendant has a previous history of criminal convictions in addition to the five felony convictions necessary to support his Range III classification; factor (3) Defendant was a leader in the commission of the offenses; factor (4), the offenses involved more than one victim; and factor (9), Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. In addition the trial court applied factor (5), the victim was particularly vulnerable because of age, to Defendant's conviction for especially aggravated robbery. *See* Tenn. Code Ann. §§ 40-35-114(2), (3), (4), (5), and (9). Without being more specific, the trial court applied enhancement factors (11) and (17) "to those sentences

where bodily injury was not an element of the underlying offense." *See id.* §§ 40-35-114(11) and (17). The trial court found that no mitigating factors were appropriate. Based on the enhancement factors, the trial court sentenced Defendant to the maximum sentence within Range III for each conviction, or sixty years for the especially aggravated robbery conviction, thirty years for each aggravated robbery conviction, and fifteen years for the aggravated assault conviction.

The trial court found that consecutive sentencing was appropriate based on its findings that Defendant has an extensive criminal history, and that he is a professional criminal and dangerous offender. *See id*. §§ 40-35-115(b)(1), (2) and (4). The trial court ordered each of Defendant's sentences in case Nos. 03-01711 to be served consecutively to each other, and consecutively to Defendant's sentence in case No. 03-01718, for an effective sentence of one hundred and sixty-five years.

A. Length of Sentences

Defendant's sole challenge on appeal as to the application of enhancement factors is based on the recent United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531 (2004). Relying on *Blakely*, Defendant argues that his Sixth Amendment right to trial by jury was violated because the trial court failed to submit to a jury the enhancement factors not based on his prior convictions. *See Blakely*, 124 S. Ct. at 2536. Our Supreme Court, however, has recently concluded that Tennessee's sentencing scheme does not violate a defendant's Sixth Amendment rights under *Blakely*. *State v. Edwin Gomez and Jonathan S. Londono,* ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *27 (Tenn. Apr. 15, 2005). Accordingly, Defendant's reliance on *Blakely* is misplaced. Nonetheless, because we find that the trial court misapplied certain enhancement factors, we will conduct a *de novo* review of the length of Defendant's sentences.

Defendant concedes the applicability of enhancement factor (2) based on his previous history of criminal convictions. *See* Tenn. Code Ann. § 40-35-114(2). The record also supports the trial court's finding that he has failed in the past to successfully comply with the terms of a paroled sentence, and that he was a leader in the commission of each of the offenses. *See id*. §§ 40-35-114(3) and (9). Ms. Murphy testified that Defendant carried the gun during the robbery at the Memphis Surgery Center, and Defendant chased her as she fled into the Center. Ms. Stidum said that Defendant pointed the shotgun at her from behind the window. Mr. Raymond identified Defendant as the driver of the vehicle during the offenses committed at the Steak and Ale restaurant. Mr. Norris said that Defendant pulled a stocking mask over his face before he demanded his wallet. "[E]nhancement for being a leader in the commission of an offense does not require that the [defendant] be the sole leader but only that he be 'a' leader" in the commission of the offense. *State v. Hicks*, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993) (citation omitted.).

The trial court found that multiple victims were involved in each of the offenses based apparently upon the presence of Ms. Murphy and Ms. Stidum during Dr. White's robbery, the

presence of Mr. Raymond during the robberies at the Steak and Ale Restaurant, and the presence of Mr. Myers during the aggravated assault of Mr. Raymond. *See* Tenn. Code Ann. § 40-35-114(4).

The term "victim" for enhancement factor (4) purposes, however, is limited to persons who are injured or killed, or who have property stolen or destroyed by the perpetrator of the charged offense. *State v. Raines*, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). Our Supreme Court has held that there cannot be multiple victims for any one offense where the indictment specifies a named victim. *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002). Each of Defendant's indictments for aggravated robbery, aggravated assault and especially aggravated robbery have a specific, named victim. The fact that there were other individuals present during Defendant's various offenses on whose behalf charges were not filed does not support application of enhancement factor (4). *Id.* Accordingly, we conclude that the trial court erred in applying enhancement factor (4) to each of Defendant's sentences.

In addition, we conclude that the trial court improperly considered enhancement factor (5), that the victim was particularly vulnerable because of age and physical limitations, to Defendant's conviction of especially aggravated robbery. *See* Tenn. Code Ann. § 40-35-114(5). Marge White, Dr. White's wife, testified that prior to the offense Dr. White had heart surgery and had difficulty using his right hand because of nerve damage. As a result, Dr. White was no longer able to perform surgery but worked at the Memphis Surgery Center in an administrative capacity. Although the trial court referred to Dr. White as elderly, the record is silent as to any indication of Dr. White's age at the time of the offense other than Defendant's characterization of Dr. White as "an old man."

A victim may be vulnerable because of physical limitations in a general sense, but that vulnerability may not have any relevance to the offense committed against him. *State v. Lewis*, 44 S.W.3d 501, 505 (Tenn. 2001). Ms. Murphy testified that Defendant and Mr. Wallace walked up behind Dr. White. Dr. White turned to run, tripped, and fell onto the pavement. There is no indication that Dr. White tripped because of a physical disability, or that any physical limitations or his age were factors in the commission of the offense. *State v. Butler*, 900 S.W.2d 305, 313 (Tenn. Crim. App. 1994). Based on the circumstances presented in this case and upon applicable case law, we find that the trial court erred in considering enhancement factor (5) in determining the length of Defendant's sentence for especially aggravated robbery.

Without specifically stating which enhancement factor applied to which offense, the trial court considered enhancement factors (11) and (17) in increasing the length of Defendant's sentences to the extent that these factors were not an element of the underlying offense. Enhancement factor (17) requires a finding that the crime was committed under circumstances which posed a great potential for bodily injury to a victim. Tenn. Code Ann. § 40-35-114(17). Defendant was charged with aggravated assault against Mr. Raymond with the use of a deadly weapon causing Mr. Raymond to fear imminent bodily injury. *Id.* §§ 39-13-101(a)(2); 39-13-102(a)(1)(B). This Court has previously concluded that the presence of great potential for bodily injury is inherent in an aggravated assault committed with a deadly weapon. *State v. Hill*, 885 S.W.2d 357, 363-64 (Tenn.

Crim. App. 1994). Thus, enhancement factor (17) is not applicable to Defendant's sentence for his aggravated assault conviction.

Enhancement factor (17) is also not applicable to Defendant's sentence for especially aggravated robbery because serious bodily injury is an element of the offense. In addition, factor (17) may not be based on the risk of potential bodily injury to an individual other than the victim of the crime. *Imfeld*, 70 S.W.3d at 706; *State v. Nix*, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). Thus, the presence of Ms. Murphy and Ms. Stinnet during the commission of the especially aggravated robbery offense does not support application of enhancement factor (17) to this sentence.

Defendant was charged with the aggravated robbery of Mr. Skelton, Mr. Norris and Mr. Mears by use of a deadly weapon. This Court has previously held that enhancement factor (17) generally cannot be used to enhance a sentence for aggravated robbery because the offense of aggravated robbery entails a high risk of bodily injury. *See State v. Claybrooks*, 910 S.W.2d 868, 872-73 (Tenn. Crim. App. 1994). As noted above, there is always a great potential for bodily injury when a deadly weapon is used in the commission of the offense. *Hill*, 885 S.W.2d at 363. Thus the trial court erred to the extent it considered enhancement factor (17) in determining the length of any of Defendant's sentences.

Enhancement factor (11) applies when the defendant has "no hesitation about committing a crime when the risk to human life" is high. Tenn. Code Ann. § 40-35-114(11). It may be applied if the defendant's conduct creates a high risk to the life of the victim, and the creation of a high risk to life is not an essential element of the charged offense. *See* Tenn. Code Ann. § 40-35-114(11); *State v. Bingham*, 910 S.W.2d 448, 452-53 (Tenn. Crim. App. 1995), *overruled in part on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000) (citing *State v. Jones*, 883 S.W.2d 597 (Tenn. 1994)). That is, "where the proof necessary to establish an element of the offense would establish that the 'risk to human life was high,' the enhancement factor is an essential element of the offense and thus inapplicable." *Id.* Defendant's use of a deadly weapon during the commission of the robberies and assault was what elevated his offenses to aggravated, and was an essential element of each of his offenses. As a general rule, enhancement factor (11) is necessarily inherent in an aggravated assault or an aggravated or especially aggravated robbery that is committed with a deadly weapon. *See State v. Makoka*, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994).

However, "[w]hile this Court has consistently held that [factor 11] should not be applied when the only person subject to being injured is the victim, this factor is not inherent . . . when other persons present could have been injured." *Id.*; *see also Bingham*, 910 S.W.2d at 452. During Dr. White's robbery, Defendant chased Ms. Murphy into the Memphis Surgery Center and she barely managed to get into the building and lock the door before Defendant caught up with her. Defendant brandished his shotgun at both Ms.Murphy and Ms. Stidum. No charges were filed against Defendant as a result of his conduct towards Ms. Murphy and Ms. Stidum. The record supports application of enhancement factor (11) to Defendant's sentence for especially aggravated robbery based on the risk of injury Defendant's conduct created for Ms. Murphy and Ms. Stidum.

Defendant's convictions arising out of the offenses committed at the Steak and Ale do not support application of enhancement factor (11). Each of the men present during the commission of these offenses was a named victim in an indictment resulting from these offenses.

In summary, we find that the trial court's application of enhancement factors (2), (3), and (9) to each of Defendant's sentences was proper. We find enhancement factor (11) was properly applied to Defendant's sentence for his especially aggravated robbery conviction, but improperly applied to Defendant's sentences for his aggravated robbery and aggravated assault convictions. We find that the trial court misapplied enhancement factor (5) in determining the length of Defendant's sentence for especially aggravated robbery. The facts surrounding the commission of Defendant's offenses do not support the application of enhancement factors (4) and (17) to any of Defendant's sentences.

Although we have determined that the trial court misapplied certain enhancement factors during its sentencing considerations, this does not necessarily lead to a reduction in the length of Defendant's sentences. *State v. Winfield*, 23 S.W.3d 279, 284 (Tenn. 2000). Based on the presence of three enhancement factors for Defendant's sentences for aggravated assault and aggravated robbery convictions, four enhancement factors for his especially aggravated robbery conviction, and no mitigating factors, we cannot conclude that the trial court erred in determining the length of Defendant's sentences. Also, the imposition of maximum sentences within the appropriate ranges for these offenses based upon the applicable enhancement factors is well within the discretion afforded to the trial court under Tennessee's sentencing scheme. *See Gomez*, 2005 WL 856848, at ** 20-22 The *Gomez* court concluded that "even after an enhancement factor is found, this statute affords to the judge discretion to choose an appropriate sentence *anywhere* within the statutory range, including the presumptive minimum sentence within the range." *Id*., at 20 (emphasis added). Thus, we affirm Defendant's sentence of sixty years for his especially aggravated robbery conviction, his sentence of thirty years for each of his aggravated robbery convictions, and his sentence of fifteen years for his aggravated assault conviction.

### B. Consecutive Sentencing

The trial court ordered Defendant's sentences for his aggravated robbery and aggravated assault convictions to be served consecutively to each other and consecutively to his sentence for his especially aggravated robbery conviction based on its findings that Defendant is a professional criminal, that he has an extensive criminal history, and that he is a dangerous offender. Defendant challenges the trial court's findings and argues that consecutive sentencing is not warranted by the circumstances surrounding his offenses.

When a Defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to run consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories listed in Tennessee Code Annotated section 40-35-115. In this instance, the trial court found as one of the factors that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. §40-35-115(a)(4). If the trial court rests its

determination of consecutive sentencing on this category, the court must make two additional findings. *Imfeld*, 70 S.W.3d at 708. First, the trial court must find that an extended sentence is necessary to protect the public from further criminal conduct by Defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995).

Although such specific factual findings are unnecessary for the other categories enumerated in Tennessee Code Annotated section 40-35-115(b), the imposition of consecutive sentences is also guided by the general sentencing principles that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'" *Imfeld*, 70 S.W.3d at 708 (quoting Tenn. Code Ann. §§ 40-35-102(1) and -103(2)); *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

Based on our review, we find that the evidence does not support a finding that Defendant is a professional criminal who knowingly devoted his life to criminal acts as a major source of his livelihood for the purposes of consecutive sentencing under Tennessee Code Annotated section 40-35-115(b)(1). As the trial court noted at the sentencing hearing, Defendant has a sparse employment record. He worked for a few months in 1999 and again in 2000 as a forklift operator. There is no evidence, however, reflecting the amount of money Defendant derived from his criminal offenses, or that he used that income, if any, to support himself. *See State v. Desirey*, 909 S.W.2d 20 (Tenn. Crim. App. 1995). Because the State failed to prove that Defendant's criminal acts provided a major source of livelihood, we find that the trial court's consideration of this factor in its sentencing determinations was inappropriate.

The evidence, however, does not preponderate against the the trial court's findings that Defendant has an extensive criminal history. *See* Tenn. Code Ann. § 40-35-115(b)(2). Defendant has at least three Class C felony convictions and nine Class D felony convictions in addition to numerous misdemeanor convictions. On August 25, 1987, Defendant pled guilty to two counts of grand larceny and two counts of receiving stolen property over $200, and received five-year sentences for each conviction. On November 13, 1987, he pled guilty to larceny and received a four-year sentence. In 1991, he was sentenced to two six-year sentences for two counts of attempt to sell cocaine. In 1996, Defendant was convicted of possession of a controlled substance and sentenced to three years. On March 15, 2002, he was convicted of a Class D felony theft conviction March 15, 2002, for which he received a sentence of two years. The current offenses were committed on July 30, 2002. Thus, Defendant's criminal history was an appropriate consideration in determining the manner of service of his sentences.

The trial court found that Defendant was a dangerous offender whose behavior indicated little or no regard for human life based on the circumstances surrounding the commission of the offenses. The trial court stated:

> But this man, and the person who helped him do this, are certainly, by any definition, dangerous offenders. They are urban terrorists. They took a shotgun and prowled

the streets of our city, threatening people's lives, taking their belongings. The testimony of each of the victims was extremely compelling.

The trial court found that consecutive sentencing was reasonably related to the severity of the offenses and necessary to protect the public based on the extent that Defendant's conduct impacted the lives of the victims. It is also apparent from the record that Defendant cannot refrain from committing crimes despite repeated convictions which evidences his dangerousness to society. Based on our review, we cannot conclude that the trial court erred in classifying Defendant as a dangerous offender for purposes of consecutive sentencing.

In any event, it is necessary to find the presence of only one of the statutory categories listed in Tennessee Code Annotated section 40-35-115(b) to support the imposition of consecutive sentencing. *See State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997). Defendant's extensive criminal history alone is sufficient to support consecutive sentencing. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm the judgments of the trial court and the imposition of consecutive sentencing.

_____
THOMAS T. WOODALL, JUDGE