# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 14, 2004

## STATE OF TENNESSEE v. HARRY JAMIESON

### Direct Appeal from the Criminal Court for Shelby County
### Nos. 00-01887, 00-01888, 00-01889    W. Otis Higgs, Jr., Judge

_____

### No. W2003-02666-CCA-R3-CD  - Filed December 23, 2004

_____

The appellant, Harry Jamieson, was convicted by a Shelby County jury of one count of aggravated robbery and two counts of aggravated assault. Following a hearing, the trial court sentenced the appellant to an effective sentence of nine years in the Tennessee Department of Correction. The appellant now appeals, challenging the sufficiency of the evidence and the sentence imposed by the trial court. In light of the United States Supreme Court's decision in Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004), we modify the appellant's sentence for aggravated robbery to eight years and the sentences for aggravated assault to three years each, for an effective sentence of eight years incarceration. We otherwise affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed as Modified.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Robert Wilson Jones, Shelby County Public Defender; W. Mark Ward, Assistant Public Defender (on appeal); and Robert J. Ross, II, Memphis, Tennessee (at trial), for the appellant, Harry Jamieson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy L. Carnesale, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On October 18, 1999, the eighteen-year-old appellant and Tyrell Arnold agreed to rob the Fazoli's Restaurant located at 6466 Poplar Avenue in Memphis. Prior to the robbery, the appellant, his girlfriend, and Arnold went to the apartment of seventeen-year-old Kevin Gonzalez, a friend who lived across the street from the restaurant. Gonzalez provided the appellant and Arnold with a duffle

bag and a BB gun. Arnold had a "movie prop pistol" that resembled a nine-millimeter handgun. Gonzalez and the appellant's girlfriend agreed to wait at the apartment during the robbery, leaving the doors unlocked in order for the appellant and Arnold to enter the apartment once the robbery was complete.

Later that evening, the appellant and Arnold entered the restaurant shortly before the restaurant closed. Upon entering the restaurant, the two men ordered a pizza and sat in a booth near the front of the restaurant. Thereafter, the restaurant manager, Stephanie Parks, walked through the dining room to lock the door in the front foyer. The two men engaged her in small talk, asking if she was the manager and when the restaurant closed. Parks answered their questions and informed them that their food would be delivered to their table. Parks then returned to the manager's office, and she and the other employees prepared to close the restaurant.

While the employees prepared for closing, Arnold walked to the kitchen with the prop gun and ordered the employees to get on the floor. He then ordered Parks to stand and open the cash registers and the safe. The money from the cash registers and safe was placed into the duffle bag. During the robbery, the appellant remained on the customer side of the counter near the registers. He did not speak or display a weapon. When the robbery was complete, the two men ran from the restaurant and returned to Gonzalez's apartment, where they split the proceeds of the robbery. Thereafter, the appellant, his girlfriend, Arnold, and Gonzalez went to a local pool hall. The appellant subsequently purchased a pair of boots and a pair of tennis shoes with his share of the stolen money.

The appellant and Arnold were subsequently charged by indictment with aggravated robbery and aggravated assault. Following a jury trial, the appellant was convicted of one count of aggravated robbery and two counts of aggravated assault.[1] The trial court sentenced the appellant to concurrent terms of nine years for the aggravated robbery and four years for each aggravated assault, for an effective sentence of nine years incarceration. On appeal, this court reversed the appellant's convictions and remanded for a new trial.[2] State v. Harry Jamieson, No. W2001-02449-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 1075 (Jackson, Dec. 13, 2002).

On retrial, Parks testified that Gonzalez had previously worked at Fazoli's but was terminated two weeks prior to the robbery. She had never seen the appellant or Arnold. Parks testified that as she spoke with the appellant and Arnold at their table on the night of the robbery, she thought it was unusual that Arnold was wearing "two sets of clothes" and both men were drinking from cups "wrapped up with paper towels."

---

[1] In his brief, the appellant notes that the appellant and Arnold "were also charged in indictments #00-01890 and #00-01891with aggravated assaults upon two other people who were present during the alleged robbery, but at the end of the [S]tate's proof, the trial [court] directed verdicts of acquittal on both indictments."

[2] On the previous appeal, this court concluded that the trial court committed reversible error by failing to instruct the jury on facilitation of aggravated robbery and aggravated assault.

Parks testified that after speaking with the men, she went to the manager's office "to get an electronic counter" to count the money in the cash registers. When she walked out of the office, Arnold was standing in the kitchen with a gun. Arnold pointed the weapon at the employees and ordered them "to get on the f***ing floor." Parks testified that Rebecca Jackson was able to "sn[eak] out the back door." Arnold then told Parks to stand and remove the money from the cash registers. When Parks stood, she observed the appellant standing on the "guest side" of the counter near the cash registers. According to Parks, the appellant did not appear to be surprised by Arnold's actions. He "was just watching what was going on up front[,] . . . looking over his shoulder to see if anyone was coming through those doors."

Parks testified that although the appellant and Arnold did not speak to each other, there was non-verbal communication, such as nodding, between the two men throughout the robbery. Parks testified, "It was obvious that [the appellant] was involved." Parks was unable to determine if the appellant had a gun; however, Arnold's gun appeared to be a nine-millimeter handgun. She testified that Arnold pointed the gun at her as she emptied the cash registers and placed the money into the duffle bag. Parks testified that after she emptied the first cash register, the restaurant telephone rang. Parks told Arnold that she should answer the telephone because if it were her boss calling, he would become suspicious when no one answered. Arnold motioned for Parks to answer the telephone, but the appellant shook his head "no." After speaking with the appellant, Arnold ordered Parks not to answer the telephone.

Shortly thereafter, a buzzer sounded alerting the employees that a vehicle had arrived at the drive-thru lane. Parks told Arnold to go to the other side of the counter or the driver would be able to see him. When the vehicle approached the window, Parks informed the driver that the restaurant had closed early because the oven was broken. After the vehicle left, Arnold asked Parks where the safe was located. As Parks led Arnold to the manager's office, she dialed 9-1-1 on a cordless telephone in her pocket. In the office, Parks removed the money from the safe and placed it in the duffle bag. Parks testified that as she removed the money, Arnold used one of his hands to point the weapon at her and the other hand to rummage through the purse of an employee, Ashley Hodges. Parks told Arnold not to steal from "a fifteen year old child." Arnold responded that he thought the purse was "a bank bag." After Parks emptied the safe, Arnold grabbed the bag, and he and the appellant ran from the restaurant. Immediately thereafter, Parks reported the robbery to the 9-1-1 operator. Police officers arrived within seconds. According to Parks, approximately $1,800 was stolen from the restaurant.

Parks testified that during the robbery, the employees remained on the floor. According to Parks, "Anthony York was incredibly calm; he didn't say a word, make any noise at all. Amanda [Murray] and Ashley [Hodges] were just hysterical, I mean, very hysterical . . . [and] [c]rying." Parks stated that although she attempted to remain calm, she was frightened and worried she would never again see her daughters.

Anthony York testified at trial that he was working at Fazoli's on October 18, 1999, when two men walked into the restaurant. York recognized the appellant, a former high school classmate.

York testified that as he and the other employees prepared for closing, "[t]he other gentleman . . . came back with the gun, told us to get down, and then he got [Parks] up and took her to the cash registers, took her back to the safe to get all the money and they left. The [appellant] . . . stayed up front." York stated that he feared Arnold who walked around pointing his gun at the employees. Although York was not as afraid of the appellant whom he did not observe with a weapon, York believed that the appellant willingly participated in the robbery.

York testified that after the men left, he and the other employees got up from the floor. He related that by the time he walked to the front of the restaurant, the police had arrived. York informed the police that he had recognized the appellant. Days later, the police returned to Fazoli's to obtain a statement from York and to ask York to view a photographic lineup. York provided a statement and identified the appellant in the lineup. York circled the appellant's photograph and wrote underneath the photograph, "I had a class at Germantown High School with this person. This is the person that did not have the gun Monday night."

Kevin Gonzalez testified that on October 18, 1999, he participated in the robbery of Fazoli's. He related that he had been employed at the restaurant several months prior to the robbery, but had been terminated. On the day of the robbery, Arnold telephoned Gonzalez and said that he and the appellant planned to rob Fazoli's. Arnold asked Gonzalez to "wait with the doors open." Shortly after their telephone conversation, Arnold, the appellant, and the appellant's girlfriend arrived at Gonzalez's apartment. Arnold and the appellant informed Gonzalez of their plan, stating that after the robbery "[t]hey were going to come back and change clothes and they were just going to wait a little bit and leave." According to Gonzalez, Arnold had the "movie prop pistol" when he arrived at Gonzalez's apartment. Gonzalez explained that when he and Arnold were young, a friend had given them the pistol. Gonzalez testified that Arnold and the appellant asked him for weapons. He gave the appellant a BB gun and provided a duffle bag in which to place the money taken from the restaurant. Prior to leaving the apartment, Arnold and the appellant placed the guns in the bag.

Gonzalez testified that after the robbery, Arnold and the appellant returned to his apartment. Thereafter, Gonzalez, Arnold, the appellant, and his girlfriend went into Gonzalez's bedroom to count the money, which totaled approximately $1,000. Arnold and the appellant divided the money and gave Gonzalez between $50 and $60. Arnold and the appellant then changed clothes, and the group went to "play[] pool." According to Gonzalez, the appellant never appeared to be afraid of Arnold.

Approximately five days later, police officers questioned Gonzalez about his involvement in the robbery. Gonzalez testified that initially he was uncooperative, but the next day he provided the officers with a statement, informing the officers of each of their roles in the robbery. He also told the officers that he had thrown the guns into a dumpster behind his apartment. The officers located the weapons, collecting them as evidence. Additionally, Gonzalez gave the officers the money that remained from his share of the robbery proceeds. Gonzalez was subsequently adjudicated delinquent in the juvenile court for committing facilitation of aggravated robbery.

Rebecca Jackson testified at trial that as she was leaving work on October 18, 1999, she heard someone say, "[G]et on the f'ing floor." Jackson testified that she hid underneath a sink. While underneath the sink, Jackson heard "people whimpering and carrying on." When Arnold and Parks went to the cash registers at the front counter, Jackson was able to sneak out the back door. Once outside, Jackson observed a vehicle approaching the drive-thru lane. Hiding in nearby bushes, she told the driver that the restaurant was being robbed and asked him to call police. The driver called the police on his cellular telephone, told Jackson to remain hidden, and then proceeded to the drive-thru window. Shortly thereafter, Jackson got into her vehicle and drove to the front of the restaurant. The perpetrators had already fled.

Jackson testified that she was unable to see if the perpetrators had weapons. However, she overheard "one of the little girls" say, "[P]lease don't shoot me, please don't shoot me." Jackson related, "At that point in time my life could have been taken, but now that I look back on it . . . my co-workers, their lives were more in danger . . . than mine was."

In its case-in-chief, the State called Tyrell Arnold as a witness, but he refused to testify. The trial court then permitted the State to introduce Arnold's testimony from the first trial. At the first trial, Arnold testified that one afternoon he and the appellant agreed to commit a robbery. They chose Fazoli's Restaurant because it was located near Gonzalez's apartment complex. According to Arnold, the appellant was initially hesitant, but "after he thought about it for a little bit he said okay, let's do it." Thereafter, Arnold and the appellant drove to Gonzalez's apartment where they changed clothes and waited until thirty minutes before the restaurant closed. Gonzalez provided the appellant with a BB gun which was placed into a duffle bag.

When the appellant and Arnold arrived at the restaurant, no customers were present, and the employees were in the "back kitchen" preparing to close. Arnold told the appellant to watch the doors while he went into the kitchen. In the kitchen, Arnold pointed the prop gun at the employees and ordered them to get on the floor. He then told the restaurant manager to open the cash registers and the safe. The appellant held the bag containing the BB gun until Arnold asked for the bag in which to put the money. After placing the money into the duffle bag, Arnold and the appellant ran from the restaurant to Gonzalez's apartment. Once inside the apartment, they divided approximately $1,400 taken from the restaurant. Arnold testified that the appellant's role in the robbery was to watch the doors and notify Arnold if anyone entered the restaurant. According to Arnold, the appellant agreed to "play that role." On cross-examination, Arnold conceded that during the robbery he never saw the appellant holding a gun.

In October 1999, Lieutenant Joseph Scott was a sergeant with the Memphis Police Department's Robbery Division. After the instant offenses were committed, Lieutenant Scott went to the home of the appellant's parents to recover property the appellant claimed to have purchased with his share of the robbery proceeds. When Lieutenant Scott arrived at the house, the appellant's parents consented to a search of the appellant's bedroom. In the bedroom, Lieutenant Scott discovered a pair of new tennis shoes and a box which had contained a pair of boots. Lieutenant Scott discovered $253 in a pillowcase in the appellant's closet. Lieutenant Scott testified that he also

went to Gonzalez's apartment and spoke with Gonzalez and his mother. Gonzalez informed Lieutenant Scott that the guns used in the robbery were in a dumpster behind the apartments. Gonzalez also gave Lieutenant Scott the duffle bag used in the robbery.

At trial, the appellant testified that he met Arnold after moving to Memphis when he was thirteen years old. Initially, the appellant believed that Arnold was "larger than life," and he wanted to emulate Arnold. However, months prior to the robbery, the appellant learned that Arnold had committed several robberies in Arkansas in order to sustain his drug addiction.

The appellant testified that in October 1999, he was living with Arnold. On the day of the robbery, he and Arnold visited Gonzalez at his apartment. The appellant testified that upon arriving at the apartment, Gonzalez informed him of Arnold's plan to commit a robbery. Gonzalez explained that Arnold needed money to hire an attorney to represent him in pending criminal cases. Eventually, the appellant agreed to participate in the robbery. The appellant testified that Arnold had chosen to rob Fazoli's Restaurant because it was located across the street from Gonzalez's apartment.

Expressing concern about the robbery, the appellant suggested that they go "look around" the restaurant. Arnold agreed, and he and the appellant walked across the street, taking the duffle bag. When they arrived at the restaurant, the appellant informed Arnold that he recognized two of the employees working that evening. After placing an order and sitting at a table, Arnold said, "[L]et's just do it right now." The appellant told Arnold he was "nuts" and stood to leave. The appellant testified that as he turned his back, he heard Arnold tell the employees to "get on the ground."

The appellant testified that when he realized Arnold was robbing the restaurant, he "froze." He was unable to speak and nodded at Arnold in an attempt to tell him "no." The appellant claimed that in hindsight, he wished he had tackled Arnold. After Arnold had taken the money, he ran past the appellant, slapped the appellant's arm, and said, "[R]un." The appellant and Arnold ran to Gonzalez's apartment, where, according to the appellant, Arnold and Gonzalez counted the money while he and his girlfriend sat in the living room. The appellant testified that Arnold placed a portion of the money into a pillowcase and shoved the pillowcase at him, saying, "[Y]ou keep your f***ing mouth shut or you'll be sorry." Thereafter, the appellant, his girlfriend, Arnold, and Gonzalez went to play pool.

The appellant claimed that he never solicited Arnold to commit the robbery, nor did he provide aid or promote the robbery. The appellant testified that at the time of the robbery he was frightened of Arnold. The appellant denied being "a lookout" during the robbery. He further denied holding the duffle bag or going behind the counter. The appellant claimed that he spent a portion of the robbery proceeds because at the time of the offenses he was eighteen years old and "stupid." He also noted that he cooperated fully with the police and informed them of Gonzalez's involvement in the crimes. On cross-examination, the appellant denied that Gonzalez gave him a BB gun to use in the commission of the robbery.

Based upon the foregoing testimony, the jury convicted the appellant of one count of aggravated robbery and two counts of aggravated assault. Following a hearing, the trial court sentenced the appellant to concurrent sentences of nine years for the aggravated robbery and six years for each aggravated assault, for an effective sentence of nine years incarceration. The trial court also imposed a five hundred dollar fine for each offense. The appellant now brings this appeal challenging the sufficiency of the evidence and the sentence imposed by the trial court.

## II. Analysis

### A. Sufficiency of the Evidence

When an appellant challenges the sufficiency of the convicting evidence, the standard for review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

On appeal, the appellant contends that the evidence at trial was insufficient to support his convictions of aggravated robbery and aggravated assault. Specifically, the appellant asserts that the evidence was insufficient to support a finding that he was criminally responsible for the offenses. The appellant argues that at most the evidence supports a finding that he was guilty of facilitation. The State maintains that the evidence was sufficient for a jury to conclude beyond a reasonable doubt that the appellant committed the instant offenses.

Aggravated robbery is defined in pertinent part as robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1) (2003). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2003). A person commits aggravated assault who intentionally or knowingly, by use or display of a deadly weapon, causes another to reasonably fear imminent bodily injury. Tenn. Code Ann. §§ 39-13-101(a)(2), 39-13-102(a)(1)(B) (2003). A person is criminally responsible for the actions of another when "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (2003).

Taken in the light most favorable to the State, the evidence adduced at trial revealed that on October 18, 1999, the appellant and Arnold agreed to rob Fazoli's Restaurant located near Gonzalez's apartment. When they entered the restaurant, the employees were in the "back kitchen" preparing to close. Arnold walked into the kitchen, pointed a "prop pistol" at the employees, and ordered them to the floor while the appellant stood near the front counter, acting as "lookout." When Parks removed the money from the register, the appellant handed a duffle bag to Arnold, who ordered Parks to place the money into the bag. After Parks had emptied the registers and safe, Arnold and the appellant ran from the restaurant to Gonzalez's apartment where they divided the money. The appellant subsequently purchased a pair of tennis shoes and a pair of boots with a portion of his share of the proceeds. Moreover, $253 was discovered in a pillowcase in the appellant's closet.

Contrary to the appellant's testimony that he was frightened of Arnold, Parks and York testified that the appellant appeared to willingly participate in the robbery. Additionally, Arnold and Gonzalez testified that the appellant helped plan the robbery, agreeing to act as "lookout" and asking Gonzalez for a weapon. Moreover, the appellant benefitted in the proceeds of the robbery. The appellant claims that the evidence supported only convictions of facilitation. We disagree. The trial court instructed the jury on facilitation of each of these offenses, but the jury convicted the appellant as charged in the indictments. We conclude that the evidence was sufficient to support the appellant's convictions of aggravated robbery and aggravated assault.

Next, the appellant asserts that, even if the evidence was sufficient "to establish criminal responsibility for the criminal offenses," the evidence was insufficient to find that he committed aggravated assaults upon Ashley Hodges or Amanda Murray, the victims named in the indictments. Specifically, the appellant argues that no evidence was presented that Hodges or Murray feared imminent bodily injury or that they were unaware that Arnold's gun was not real. The appellant notes that neither Ashley Hodges nor Amanda Murray testified at trial. The appellant contends that, even if circumstantial evidence existed to support the charges, "it cannot be said that the evidence is such to justify a rational trier of fact in finding guilt beyond a reasonable doubt."[3]

"A victim's fear of imminent bodily injury may be proven with circumstantial evidence." State v. Jessie James Austin, No. W2001-00120-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 66, at **14-15 (Jackson, Jan. 25, 2002). In Austin, a case with similar facts, the defendant was convicted of two counts of aggravated assault for pointing a gun at two young brothers. Id. at *2. Only one of the brothers testified at trial. Id. at *14. On appeal, the defendant contended that because only one victim testified at trial, the defendant could not be convicted of the aggravated assault of both victims. Id. Specifically, he argued that "because [the other victim] did not testify, nothing shows that [he] feared imminent bodily harm or that he was even aware that a gun was pointed at him." Id. However, this court observed that such fear may be proven with circumstantial evidence, noting that "'[t]he element of "fear" is satisfied if the circumstances of the incident, within

_____

[3]The State failed to address these specific arguments regarding the sufficiency of the evidence supporting the convictions for the aggravated assaults of Hodges and Murray.

reason and common experience, are of such a nature as to cause a person to reasonably fear imminent bodily injury.'" Id. at *15 (quoting State v. Gregory Whitfield, No. 02C01-9706-CR-00226, 1998 Tenn. Crim. App. LEXIS 529 (Jackson, May 8, 1998)). Based upon the facts and circumstances, this court concluded in Austin that the evidence was sufficient to show that the defendant's actions caused both victims to reasonably fear imminent bodily injury. Id. at *16.

In the instant case, the evidence established that Arnold confronted the employees, displaying what appeared to be a nine-millimeter handgun and ordering them to the floor. At trial, Parks specifically named Hodges and Murray when asked at whom Arnold pointed the gun. She further related that Hodges and Murray were "hysterical" and "crying" as they lay face down on the floor during the robbery. Jackson testified that as she hid underneath the sink, she heard "people whimpering and carrying on." She also heard "one of the little girls" say, "[P]lease don't shoot me, please don't shoot me." Jackson related, "At that point in time my life could have been taken, but now that I look back on it . . . my co-workers, their lives were more in danger . . . than mine was." As in Austin, we conclude that the evidence in the instant case was sufficient for a rational juror to infer that Hodges and Murray reasonably feared imminent bodily injury.

### B. Sentencing

Prior to our review on appeal, the appellant filed a motion requesting this court to consider the impact on his sentence of the United States Supreme Court's decision in Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004), which was released after the appellant submitted his brief in the instant case. We granted the appellant's request and granted the State the opportunity to respond to the appellant's arguments on the issue.

This court has recognized that Blakely "calls into question the continuing validity of our current sentencing scheme." State v. Julius E. Smith, No. E2003-01059-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 644, at *10 (Knoxville, July 19, 2004); see also State v. Michael Wayne Poe, No. E2003-00417-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 643, at *26 (Knoxville, July 19, 2004). In Blakely, __ U.S. __, 124 S. Ct. at 2537 (citations omitted), the Supreme Court held that

> the "statutory maximum" for Apprendi [v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000)] purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

The appellant was sentenced as a Range I standard offender, for which the applicable range for a Class B felony is eight to twelve years and for a Class C felony is three to six years. Tenn. Code Ann. § 40-35-112(a)(2)-(3) (2003). The presumptive sentence for Class B and C felonies is the minimum within the applicable range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If the trial court finds that such factors do exist, the court must start at the presumptive sentence, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e).

In the instant case, the trial court applied enhancement factor (4), the offense involved more than one victim, and enhancement factor (11), the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114 (2003). The trial court found no mitigating factors to be applicable. Based upon its findings, the trial court sentenced the appellant to concurrent sentences of nine years for the aggravated robbery and six years for each aggravated assault. The trial court also imposed a five hundred dollar fine for each conviction.

In its supplemental brief, the State concedes that enhancement factor (4) was applied in error. We agree. In sentencing the appellant after his first trial, the trial court applied enhancement factor (3), now factor (4), upon finding that the offense involved more than one victim.[4] On appeal, this court concluded that this factor may not be applied to enhance a sentence "when, as here, the defendant was convicted of committing aggravated robbery and aggravated assaults against specific, named victims." State v. Harry Jamieson, No. W2001-02449-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 1075, at *31 (Jackson, Dec. 13, 2002) (citing State v. Imfeld, 70 S.W.3d 698, 706 (Tenn. 2002)).

On the other hand, enhancement factor (11), the defendant had no hesitation about committing a crime when the risk to human life was high, may be applied when there is a risk to the life of someone other than the victim. Imfeld, 70 S.W.3d at 707; see also Jamieson, 2002 Tenn. Crim. App. LEXIS 1075, at **32-33. Prior to Blakely, the application of enhancement factor (11) would have been appropriate in the instant case. However, because the facts underlying the application of enhancement factor (11) were not reflected in the jury verdict or admitted by the appellant, Blakely precludes its application. State v. Ambreco Shaw, No. W2003-02822-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 826, at **26-27 (Jackson, Sept. 28, 2004).

Having determined that factors (4) and (11) should not have been applied to enhance the appellant's sentences, we conclude that the sentences should be modified to the presumptive minimum sentences. Accordingly, the sentence for aggravated robbery is modified to eight years and the sentences for aggravated assault are modified to three years each, to be served concurrently for an effective sentence of eight years incarceration.

---

[4]Beginning July 4, 2002, "the 2002 amendment [to Tennessee Code Annotated section 40-35-114] added present [enhancement factor] (1) and redesignated former (1) through (22) as present (2) through (23), respectively." Tenn. Code Ann. § 40-35-114, Amendments (Supp. 2002).

### III.  Conclusion

Based upon our review of the record, we affirm the appellant's convictions.  However, we modify the appellant's sentence for aggravated robbery to eight years and each of the sentences for aggravated assault is modified to three years.

_____

NORMA McGEE OGLE, JUDGE