IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 7, 2006

## STATE OF TENNESSEE v. TONY SAMUEL

**Appeal from the Circuit Court for Lauderdale County**
**No. 7690    Joseph H. Walker, Judge**

**No. W2005-01448-CCA-R3-CD  - Filed April 5, 2006**

The Defendant, Tony Samuel, was convicted by a Lauderdale County jury of burglary and Class E felony theft.  He received an effective seven-year sentence for these convictions.  In this appeal as of right, the Defendant argues that: (1) the evidence is insufficient to support his convictions and (2) his sentences are excessive.  After a review of the record, the judgments of conviction and resulting sentences are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Kari I. Weber, Covington, Tennessee, for the appellant, Tony Samuel.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Elizabeth Rice, District Attorney General; and Tracey Brewer-Walker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

At approximately 2:58 a.m. on May 27, 2004, surveillance cameras recorded a burglary at the Little General store in Halls, Tennessee.  The video showed two individuals, driving a white vehicle, stop and park in front of the store.  The individuals then "got out of the vehicle, walked up to the window of the store, looked through the window, walked back across there several times, went back to their car, came back."  One of the individuals used a "stick like object" to break the window.  "[T]hen they both enter[ed] the store and [took] several items off the shelf and then [left], [came] back a second time and [took] more items and [left] the store again."  It was later determined that twenty-seven cartons of cigarettes were stolen from the store, worth $901.53.

Halls Chief of Police Joe Pursell viewed the surveillance video in the manager's office of the Little General. Chief Pursell could not identify the individuals on the video and determined that "the subject may not be from Halls, Tennessee." About a week later, Chief Pursell "took the tape to Ripley because [he] knew they had better equipment[.]" Chief Pursell and Officer Terry Jordan of the Ripley Police Department viewed the video a "[c]ouple dozen times[,]" and Officer Jordan identified the Defendant as one of the perpetrators of the burglary. According to Officer Jordan, he had known the Defendant for ten to twelve years and, from the video, he was able to identify facial hair on the Defendant. He stated that, during the burglary, the Defendant was "[w]earing a dark colored shirt and a white ball type cap."

Based upon the identification of the Defendant from the surveillance video, Chief Pursell and Officer Jordan went to the home of April Powell, the Defendant's girlfriend. The Defendant lived at the residence with Ms. Powell. The officers "made a trip by the house" and noticed the Defendant sitting "on the front porch wearing a white ball cap[.]" The officers also identified the vehicle in Ms. Powell's driveway as similar in "make, model and design features" to the vehicle used in the burglary of Little General. Ms. Powell owned a 1996 white Buick. The officers elected to conduct further investigation before making an arrest.

On June the 8th, Chief Pursell received a call that he was needed at Baptist Memorial Hospital in Ripley. At the hospital, he encountered Ms. Powell and told her that he "believed her vehicle might have been used in a burglary." Ms. Powell consented to a search of the vehicle. Inside the car, Chief Pursell located a stick that looked similar to the object used to break the window of the Little General store. According to Chief Pursell, the stick was not "usable" for fingerprint testing.

Ms. Powell stated that her vehicle and car keys were missing when she woke up on May 27, 2004. When she saw the Defendant at 7:30 a.m. that morning, the car had been returned. Ms. Powell was on a fixed income and stated that she kept track of the amount of gas in her vehicle. On the morning of May 27th, her car was unusually low on gas.

At some point during the investigation, Sergeant Rita Burnett also viewed the surveillance video and identified the Defendant, whom she had known for about six years, as one of the perpetrators. She stated the perpetrator was a black male and was the same height and build as the Defendant. After viewing the video on two separate occasions for approximately ten minutes each time, Sergeant Burnett identified the Defendant based upon his "distinctive" facial features.

On October 4, 2004, a Lauderdale County grand jury indicted the Defendant for burglary and theft of property valued over $500 but less than $1,000. The Defendant did not testify on his own behalf at trial and, following the State's presentation of evidence, the jury found the Defendant guilty as charged.

A sentencing hearing was held on March 8, 2005. The trial court sentenced the Defendant to seven years as a Range II, multiple offender for the burglary conviction and three years as a Range

II, multiple offender for the Class E felony theft conviction.  These sentences were to be served concurrently in the Department of Correction.  The Defendant filed a motion for new trial, which was denied.  This appeal followed.

## ANALYSIS

### I.  Sufficiency of the Evidence

First, the Defendant contends that the evidence was insufficient to support his convictions for burglary and theft of property valued over $500 but less than $1,000.  Specifically, he argues that "the proof of identification was minimal at best."  The Defendant asserts that the officers' identification of him from the surveillance video is suspect based upon the following rationale:

> [T]he video itself and still photos from the video introduced into evidence at the trial provide no clear assistance in identification of the individuals in the video.  Officer Terry Jordan conceded in viewing a still photo from the video that he could not see the individual's eyes, whether they are close together or far apart, the type of forehead, the type of cheekbones, whether the person had facial hair, the type of nose, or the length of hair.  Officer Jordan agreed he could not see these characteristics in the video played at trial either.  Similarly, Officer Rita Burnett could not identify facial features in the video or photos introduced as evidence in the trial.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."  A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt.  State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom.  Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599.  A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory.  State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence.  Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659.  Nor will this Court substitute its own inferences drawn from

circumstantial evidence for those drawn by the trier of fact. <u>Evans</u>, 108 S.W.3d at 236-37; <u>Carruthers</u>, 35 S.W.3d at 557.

As relative to this case, Tennessee Code Annotated section 39-14-103 provides, "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. Additionally, in order to sustain a conviction for burglary, the State must prove that a person, without the effective consent of the property owner, entered a building other than a habitation, which was not open to the public, with intent to commit a theft. § 39-14-402(a)(1).

In this case, the Defendant's sufficiency argument is based upon the credibility of Officers Jordan and Burnett, who identified the Defendant as one of the perpetrators from the Little General surveillance video. Both officers stated that they were certain that the Defendant was the person who appeared in the video. The evidence at trial also established that the Defendant had access to his girlfriend's car, which was similar to the one used by the perpetrators; a stick, like the one wielded to shatter the store window, was found in the girlfriend's vehicle; and the Defendant was seen wearing a "white ball cap" that resembled the hat worn by a perpetrator. We conclude that the positive identification testimony by the officers from the surveillance video and the corroborative evidence of the video and other proof sufficiently support the Defendant's convictions for burglary and theft of property. <u>See</u> <u>State v. Stacy Johnson</u>, No. W2004-00464-CCA-R3-CD, 2005 WL 645165, at *10 (Tenn. Crim. App., Jackson, Mar. 15, 2005). This issue is without merit.

## II. Sentencing

Next, the Defendant argues that his sentences for burglary and theft are excessive because the trial court failed to properly weigh the enhancing and mitigating factors. Specifically, he states:

> Based on his record as a whole, this sentence does not match the severity of the offenses for which he is convicted.
>
> . . . .
>
> . . . The Court did find that the defendant neither caused nor threatened serious bodily injury as a mitigating factor. Defendant asserts that the adjustment of the sentence above the minimum in the range was not appropriate based on his prior record alone.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own

behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

Tennessee Code Annotated § 40-35-210 states that, if both enhancement and mitigating factors are present, the court must start at the minimum sentence, enhance as appropriate for enhancement factors, and then reduce the sentence as appropriate for applicable mitigating factors. Tenn. Code Ann. § 40-35-210(e).[1] The Defendant was convicted as a Range II, multiple offender of burglary, a class D felony, which carries a sentence range of four (4) to eight (8) years. § 40-35-112(b)(4). He was also convicted of the theft of property valued over $500 but less than $1,000, a Class E felony, see § 39-14-105(2), which carries a range of two (2) to four (4) years, see § 40-35-112(b)(5). Here, the trial court found one (1) enhancement factor, the Defendant's history of criminal conduct, see § 40-35-114(2) (2004), and one (1) mitigating factor, the lack of serious bodily injury, see § 40-35-113(1) (2004), applied. Thereafter, the trial court enhanced the Defendant's sentences to seven (7) years for burglary and three (3) years for theft.

The Defendant disputes the weight the trial court gave to the sole enhancement factor. In enhancing the Defendant's sentences based upon is prior criminal record, the trial court stated:

---

[1] We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. However, the Defendant's crimes in this case, as well as his sentencing, predate the effective date of these amendments. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

As set out in the presentence report, he has multiple Theft convictions out of Lauderdale General Sessions. He has, in May of '99 for the offense date, conviction date . . . August of '99. Then he has August of '99 offense date, conviction date in September of '99, Driving While his License is Revoked in Sessions Court in August of '99. Another Theft in February of '99 with a conviction date in May of '99. The Burglary conviction in Docket Number 6784 was used to establish the appropriate range. He has a Theft conviction in the same docket number. He has another Theft conviction in the same docket number. He has another Theft conviction out of General Sessions Court for May of '98. At least one of the Forgery convictions was used to establish the appropriate range, but there are a couple of additional Forgery convictions. A Theft conviction out of Ripley City Court in April of '98. There's a conviction for which he received three years in Docket Number 5934 out of Circuit. There's also a Theft conviction that's a misdemeanor in 5582 out of Circuit in '92. An Aggravated Burglary conviction in 1991 used to establish the appropriate range. So in addition to those convictions used to establish the appropriate range, there are a number of other misdemeanor and a couple of felony convictions.

In imposing the sentences, the trial court then concluded that the enhancement factor "greatly outwiegh[ed]" the mitigating factor.

The Defendant's criminal history includes thirteen convictions in addition to those necessary to establish the range of multiple offender. Relying on the presentence report, these thirteen convictions consist of one conviction for driving on a revoked license, one conviction for failure to appear, two convictions for driving while license suspended, seven misdemeanor theft convictions, and two forgery convictions. Additionally, the report establishes three prior violations of parole or probation. We exercise our de novo review and find that enhancement factor (9), the Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, also applies to the Defendant. Tenn. Code Ann. § 40-35-114(9) (2004). While the trial court found that mitigating factor (1) applied, the lack of serious bodily injury, see § 40-35-113(1) (2004), the trial court noted that this factor applied merely because "no victims [were] present on the scene" and, therefore, it was entitled to minimal weight. Upon our de novo review, we conclude that the record supports the sentencing decision of the trial court.

## CONCLUSION

In accordance with the foregoing authorities and reasoning, we conclude that the evidence is sufficient to support the Defendant's convictions for burglary and Class E felony theft and that his sentences are not excessive. Accordingly, the judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE