IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 10, 2009

**STATE OF TENNESSEE v. TITUS A. MILLER**

**Direct Appeal from the Circuit Court for Madison County**
**No. 07-676    Donald H. Allen, Judge**

---

**No. W2009-00458-CCA-R3-CD  - Filed May 27, 2010**

---

A Madison County jury convicted the defendant, Titus A. Miller, of simple possession of
marijuana and evading arrest, both Class A misdemeanors.  The trial court sentenced the
defendant to eleven months, twenty-nine days for each conviction, to be served consecutively
to each other and to a sixty-month federal sentence.  The court ordered the defendant to serve
the sentences in the county jail, with a release eligibility percentage of seventy-five percent.
On appeal, the defendant argues that the evidence was insufficient to support his convictions
and that the trial court erred by ordering him to serve his sentences consecutively.  After
reviewing the record, the parties' briefs, and applicable law, we affirm the judgments of the
Madison County Circuit Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and
ROBERT W. WEDEMEYER, JJ. joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Titus A. Miller.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney
General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Alfred Earls and
Brian Gilliam, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Background**
    In December 2007, a Madison County grand jury indicted the defendant on six counts:
(1) possession of marijuana with intent to sell or deliver; (2) aggravated assault; (3) evading
arrest; (4) resisting arrest; (5) driving while under the influence of an intoxicant; and (6)

violation of the seat belt law. The parties presented the following evidence at a jury trial on October 1, 2008.

*State's Proof.* Officer Samuel Gilley, of the Jackson Police Department, testified that around 7:30 p.m. on June 20, 2007, he observed the defendant driving on Highland Avenue without wearing a seat belt. Officer Gilley initiated his emergency equipment, and the defendant pulled over at the next side street. A second person, Michael Aldrich, was in the front passenger seat. Officer Gilley asked for the defendant's license and registration and noticed that the defendant's eyes were bloodshot, a smell of marijuana was coming from the defendant's person and the vehicle, and the defendant's speech was slurred. Officer Gilley believed the defendant was intoxicated and asked him to step out of the vehicle "to perform some field sobriety tests on him." The defendant complied.

Officer Robertson arrived on the scene in a separate patrol car and stayed on the passenger's side of the car to watch Mr. Aldrich while Officer Gilley took the defendant to the rear of the car, on the driver's side. Officer Gilley testified that the defendant "began to act a little funny, reaching around in his pants, reaching for his waistband and stuff like that." Officer Gilley asked the defendant to place his hands on his head and began to frisk him for a weapon. The defendant became tense and started shaking. Officer Gilley "told him to relax . . . and he began at that time to try to run and get away from me." He grabbed the defendant around the waist, and they "struggled a little bit . . . ." They ran by the partially opened driver's side door, and the defendant grabbed the door. The door hit Officer Gilley in the face, and he "momentarily blacked out." Officer Gilley testified that "what [he] remember[ed] after that is being on the ground with him tussling" and he "struck [the defendant] a couple of times . . . in the facial area."

As a result of the altercation, Officer Gilley had a knot above his right eye and was bleeding from his eye socket. He received treatment at Convenient Care. His vision was blurry, and he continued to have problems with his vision, resulting in the need to wear eyeglasses. The defendant suffered injury to his mouth and received treatment at Jackson-Madison County General Hospital.

Officer Robertson helped Officer Gilley handcuff the defendant. When Officer Gilley walked to the passenger-side of the car to get Mr. Aldrich "under control," the defendant began running away with Officer Robertson chasing him. Officer Gilley called for back-up.

When other officers arrived on the scene, Officer Gilley requested that Officer Trey Trull assist him in searching the vehicle because he "was a little bit disoriented and dizzy." They discovered a bag containing several smaller bags of marijuana in the car. Officer Gilley testified that the packaging was consistent with the way marijuana is packaged for resale. They did not find any drug paraphernalia. Officer Robertson recovered a small bag

of marijuana that the defendant had dropped during the chase. The bag from the car amounted to 13.9 grams of marijuana, and the bag dropped by the defendant weighed 5.5 grams of marijuana. The passenger, Mr. Aldrich, eventually pled guilty to possession of marijuana.

On cross-examination, Officer Gilley testified that in June 2007, his patrol car was equipped with a video camera, but the camera was not operating due to a malfunction. Officer Gilley said he saw the defendant "riding up and down Highland Avenue that day . . . ." The first time Officer Gilley saw him, the defendant was wearing a seat belt, but fifteen minutes later, he was not wearing it. Officer Gilley pulled him over because of the seat belt; however, he did not follow the defendant long enough to determine his driving ability. The defendant already had his license and registration ready to give to Officer Gilley by the time he reached the defendant's car. The defendant did not stumble or fall when he exited the car. Officer Gilley said he smelled burning marijuana on the defendant and in the defendant's car but did not find anything in the car that would indicate that the occupants had recently smoked marijuana. The bag of marijuana found by the officers in the car was stuffed between the console and the passenger seat.

Prior to pulling the defendant over, Officer Gilley had taken a break. He parked his patrol car alongside Officer Robertson's patrol car in the Software City parking lot. He recalled that he testified at the preliminary hearing that he and Officer Robertson might have discussed the defendant while they were on break, and one of them said, "Let's go do something." Officer Robertson arrived on the scene soon after Officer Gilley pulled the defendant over because he was in the area and heard Officer Gilley over the radio; Officer Gilley denied that they had previously orchestrated Officer Robertson's arrival.

Officer Gilley agreed that he punched the defendant even though he had a baton and pepper spray. He denied hitting the defendant as hard as he could and suggested that the defendant's injury might have come from hitting the ground during their struggle. Officer Robertson did not strike the defendant in Officer Gilley's presence. He agreed that the defendant went to the Regional Medical Center in Memphis after he went to Jackson-Madison County General Hospital. Officer Gilley did not ask the defendant to submit to blood tests, nor did he obtain samples of the defendant's blood from the hospital for testing.

Officer Ashley Robertson, of the Jackson Police Department, testified that on June 20, 2007, he and Officer Gilley took a break together, and soon after they went back to work, he heard Officer Gilley say over the radio that he was making a traffic stop on Hicks Street. Officer Robertson was close to that location, so he went to Hicks Street to back up Officer Gilley. He went to the passenger side of the car and tried to get identification from Michael Aldrich. He heard Officer Gilley tell the defendant that he was going to frisk him for weapons. Officer Robertson then heard a bang and saw Officer Gilley and the defendant

struggling on the ground.  By the time he got to them, the defendant was on his feet, so Officer Robertson tackled him, and Officer Gilley handcuffed him.  At that time, the defendant complained that his jaw was broken. Officer Robertson was attempting to perform a search of the defendant when the defendant ran away.  As the defendant was running, Officer Robertson saw him reach into his pants and then "something [fell] out of his pants." The defendant eventually ran into a structure at 112 Hicks Street, which is where Officer Robertson caught up to him.  Officer Robertson had another officer backtrack the chase, and that officer found a bag of marijuana.  Officer Robertson testified that the bag was consistent with what he saw fall out of the defendant's pants.  He further testified that the defendant did not strike him at any point.  He did not transport the defendant to the hospital.

On cross-examination, Officer Robertson said that Officer Gilley had seen the defendant about fifteen minutes prior to the traffic stop, during their break.  He agreed that one of them said either "Let's go to work" or "Let's go do something" at the end of their break.  Officer Robertson testified that his patrol car did not have a video camera that day because the department was in the process of replacing it.  He denied punching the defendant.  He said the defendant was "spitting out big puddles of blood" and was injured either from Officer Gilley punching him or Officer Robertson falling on him.  He did not see Officer Gilley punch the defendant and did not recall telling him that he had gone too far. Officer Robertson said that the defendant dropped marijuana during the chase but not inside his vehicle.

Officer Trey Trull, of the Jackson Police Department, testified that on June 20, 2007, he responded to a call either for assistance or that there was a foot pursuit.  When he arrived at the scene, he observed Officer Gilley leaning against a white Crown Victoria car.  He appeared dazed and asked Officer Trull for assistance in searching the car.  Officer Trull pointed out the bag of marijuana, which Officer Gilley recovered.  Officer Trull was present when Officer Robertson led the defendant back to the vehicle.  He was unable to tell what condition the defendant was in at that time.

Special Agent Tarsha Bond, a forensic scientist with the Tennessee Bureau of Investigation, testified that she tested substances related to this case.  She determined that the substances in both the bag containing smaller bags and the individual bag were marijuana. The total weight of the marijuana in both bags was 15.6 grams.

*Defense Proof.*  Renarda Ford testified that on June 20, 2007, she lived at 320 East Forest Avenue, near Highland Avenue.  On that day, she witnessed the traffic stop on Hicks Street.  She testified that she

> saw [the defendant] getting out of the car and an officer taking one hand and
> putting it behind his back and putting him on the ground and the officer then

placed his knee on the back of his neck. After that, another officer came from the passenger side of the car around and started punching [the defendant].

She did not see the defendant provoke the officers or hit one of the officers with a car door. When Ms. Ford saw the incident, she did not recognize the defendant, whom she knows through a friend, but she learned later that he was involved.

On cross-examination, Ms. Ford testified that she was behind the two patrol cars during the incident and was far enough away that she could not identify the faces of those involved. She did not report the incident to authorities.

The defendant testified that on June 20, 2007, he was wearing his seat belt when Officer Gilley pulled him over. He was not under the influence of any drugs and had not been smoking marijuana. When he stepped out of his car, he was nervous, and he told the officer that he had pulled him over for no reason. Officer Gilley became "irate" and threw the defendant to the ground. Officer Robertson came from the other side of the car and began punching him, seven to eight times. The officers handcuffed him while he was lying on the ground and walked several feet away. He heard Officer Gilley tell Officer Robertson that he had gone too far. The defendant said that the officers' conversation made him afraid for his life because he thought they might plant evidence on him and then kill him. He got up and went to a yard on Hicks Street where people were outside and "laid down in the grass so that someone would be witnessing what was going on . . . ."

The defendant said that Officer Robertson took him to Jackson-Madison County General Hospital. The defendant told the nurses that the police had beaten him. After thirty minutes, Officer Robertson uncuffed him and left. The attending doctor told him that the hospital would transfer him to the Regional Medical Center in Memphis, where an oral surgeon would repair his jaw. The defendant testified that his mouth was wired shut for ten weeks. He identified pictures that he took of other injuries he sustained on June 20, including scrapes on the left side of his face, his shoulder, and his knees. He denied hitting Officer Gilley with a car door and denied that the small bag of marijuana was his.

On cross-examination, the defendant said that he had used marijuana in the past. He recalled that Officer Robertson slid on his knees, on hard pavement, when he came to the driver's side of the car and began punching him. The defendant said that Michael Aldrich witnessed everything and testified on his behalf at the preliminary hearing. Mr. Aldrich had since pled guilty to possession of the marijuana in the car. The defendant said that the marijuana in the car was solely Mr. Aldrich's. When asked why the officers would beat him, the defendant said he believed the officers' conduct was racially-motivated, and they had planned to give "a nice little beat down on somebody" while their patrol car cameras were not working.

-5-

After deliberations, the jury found the defendant not guilty of aggravated assault, resisting arrest, driving while intoxicated, and violation of the seat belt law. The jury found him guilty of evading arrest and the lesser-included offense of simple possession of marijuana.

The trial court held a sentencing hearing on October 24, 2008. At the hearing, the defendant testified that he was incarcerated in West Virginia on a felony firearm conviction. The federal judge sentenced him to sixty months. The defendant asked for concurrent sentences based on the fact that the jury acquitted him of four of the charged offenses. He testified that he was twenty-seven years old and had a two-year-old daughter, who lived in West Virginia with her mother.

The trial court found that the defendant had an extensive criminal history. The court did not consider the defendant's minor traffic offenses for enhancement purposes. The court considered the defendant's convictions from Haywood County, which were unlawful possession of drug paraphernalia, evading arrest, and possession of marijuana; his conviction in Shelby County for possession of drugs; his convictions in Madison County for possession of marijuana with intent to sell, possession of a deadly weapon with intent to employ in the commission of a felony, unlawful possession of drug paraphernalia, simple possession of marijuana (twice), evading arrest, and violation of the seat belt law; his conviction in Hardeman County for selling drugs; and his federal firearms conviction. In total, the defendant had two Class E felonies, ten misdemeanor convictions, and a federal felony conviction. The court found that the defendant had a history of unwillingness to comply with the conditions of probation because he committed several offenses while on probation and had his probation revoked once. The court did not find any mitigating factors. The court sentenced the defendant to eleven months, twenty-nine days for evading arrest and eleven months, twenty-nine days for simple possession. The court ordered the defendant to serve the sentences consecutively because of his extensive criminal history. The court further ordered that the sentences be consecutive to the federal sentence because the defendant was out on bond on state charges[1] when he committed the instant offenses. The defendant then filed this timely appeal.

## Analysis

On appeal, the defendant alleges that the evidence was insufficient to support his convictions of evading arrest and simple possession of marijuana. He further challenges the trial court's imposition of consecutive sentencing, arguing that his criminal history was not so extensive as to merit consecutive sentences.

---

[1] The state dismissed the charges when the defendant pled guilty in federal court because the federal and state charges were based on the same offense.

*Sufficiency of the Evidence*

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558; *Tuggle*, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002); *Bland*, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *See State v. Elkins*, 102 S.W.3d 581, 582 (Tenn. 2003); *Reid*, 91 S.W.3d at 277.

To sustain the defendant's conviction for simple possession of marijuana, the state had to prove beyond a reasonable doubt that the defendant knowingly possessed a controlled substance, unless the substance was obtained via a prescription of a practitioner. *See* Tenn. Code Ann. § 39-17-418(a). As for the defendant's conviction for evading arrest, the state had to prove beyond a reasonable doubt that the defendant intentionally fled, by any means of locomotion, from anyone that the defendant knew to be law enforcement if the defendant either knew the officer was attempting to arrest him or the officer had arrested him, and the arrest was lawful. *See* Tenn. Code Ann. §39-16-603.

Viewing the evidence in the light most favorable to the state, we conclude that the evidence was sufficient to support the defendant's convictions. In this matter, Officer Robertson testified that the defendant dropped a bag while he was running from the officer. Another officer recovered the bag, and a forensic scientist determined that the substance in the bag was marijuana. Additionally, the defendant testified that he ran from the officers after he had been handcuffed. Officer Gilley testified that he stopped the defendant because the defendant was not wearing a seat belt, initiated a frisk because the defendant was agitated, and handcuffed the defendant after the defendant's first attempt to flee. The jury's verdict accredited the state's witnesses and resolved any conflicts in favor of the state.

*Harris*, 839 S.W.2d at 75. The state proved that the defendant possessed a bag of marijuana that he dropped while fleeing, in handcuffs, from law enforcement. Therefore, the evidence is sufficient to support the defendant's convictions for evading arrest and possession of marijuana. The defendant is without relief as to this issue.

*Consecutive Sentencing*

An appellate court's review of a challenged sentence is *de novo* on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The Sentencing Commission Comments to this section of the statute indicate the defendant bears the burden of establishing that the sentence is improper. When the trial court follows the statutory sentencing procedure and gives due consideration to the factors and principles relevant to sentencing, this court may not disturb the sentence. *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008).

A trial court is allowed greater flexibility in setting misdemeanor sentences than felony sentences. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). No separate sentencing hearing is required, though the court must give the defendant a reasonable opportunity to be heard regarding the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a). There is no presumption of a minimum sentence. *State v. Humphreys*, 70 S.W.3d 752, 768 (Tenn. Crim. App. 2001).

The sentence must be specific and in accordance with the principles, purposes, and goals of the Sentencing Act. Tenn. Code Ann. § 40-35-302(b); *State v. Palmer*, 902 S.W.2d 391, 393 (Tenn. 1995). A determinate sentence should be set with a percentage of not greater than 75 percent to be served in confinement. Tenn. Code Ann. § 40-35-302(d). The trial court should consider the enhancement and mitigating factors when calculating the percentage of the sentence to be served in confinement. *Id*.; *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). The trial court is authorized to place the misdemeanant on probation either immediately or after a term of confinement. Tenn. Code Ann. § 40-35-302(e).

A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) [t]he defendant is an offender whose record of criminal activity is extensive;

(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The general principles of sentencing require that the length of sentence be "justly deserved in relation to the seriousness of the offense" and "be no greater than that deserved for the offense committed." *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (citing Tenn. Code Ann. §§ 40-35-102(1) and -103(2)).

The defendant admits that he has more than ten misdemeanor convictions, two state felony convictions, and a federal felony conviction. He argues, however, that the trial court should not have considered traffic violations when determining the extent of the defendant's criminal history. The trial court specifically gave no weight to the numerous traffic violations on the defendant's record. In fact, of the ten misdemeanors considered by the trial court, only one - a seat belt violation that the defendant committed while on probation - was a traffic violation. The other nine misdemeanors were related to either marijuana possession or evading arrest, the exact offenses for which the jury convicted the defendant of in this matter. The defendant also has a total of three felony convictions. We find the defendant's argument that he does not have an extensive criminal history to be unpersuasive. We conclude that the trial court did not err in imposing consecutive sentences. The defendant is, therefore, without relief as to this issue.

## Conclusion

Based on the foregoing reasons, we affirm the judgments of the trial court.

_____

J.C. McLIN, JUDGE