IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2017

**STATE OF TENNESSEE v. JOSEPH D. SEXTON**

**Appeal from the Circuit Court for Robertson County
No. 74CC4-2016-CR-194  William R. Goodman III, Judge**

_____

**No. M2017-00735-CCA-R3-CD**

_____

The Defendant, Joseph D. Sexton, entered an open guilty plea to one count of attempted aggravated sexual battery.  The trial court held a sentencing hearing and sentenced the Defendant to five years of incarceration.  The Defendant appeals, arguing that the trial court erred in calculating the length of the sentence based on the enhancing and mitigating factors presented and that the trial court erred in denying alternative sentencing.  After a thorough review of the record, we determine that there was no abuse of discretion, and we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

H. Garth Click, Springfield, Tennessee, for the appellant, Joseph Daniel Sexton.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Defendant was charged with three counts of aggravated sexual battery for crimes committed against his eleven-year-old daughter.  The State entered into a plea agreement with the Defendant in which the State agreed to dismiss two of the counts in exchange for the Defendant's guilty plea to one count of the lesser included offense of

attempted aggravated sexual battery. The parties agreed that the sentence would be determined by the trial court and that the Defendant should be sentenced as a standard, Range I offender, with a release eligibility of thirty percent.

At the hearing on the guilty plea, the prosecutor recited the factual basis of the plea: that the Defendant had touched the victim's vaginal area while she was under thirteen years of age. He asserted that the Defendant had acknowledged his crime to the victim's mother. The Defendant agreed that he was guilty of the crime.

At the sentencing hearing, the victim testified to the details of the crime. The Defendant and his wife adopted the victim and her older brother when the victim was three years old, and the victim knew them as her parents. When the victim was eleven, she woke up in the middle of the night and became aware that the Defendant had undone her bra and was touching her breasts. The Defendant then began to touch her vaginal area, and she "prayed and … told him to stop."

The victim testified that her brother found out about the abuse and was very angry with the Defendant. The victim's brother began to sleep next to her bed every night in an effort to protect her. One day, the victim came home from school to discover that the Defendant had sent her brother away to live with the children's biological aunt, who had remained in frequent contact with them despite the adoption.

About a year after the events that were the basis of the guilty plea, the victim's mother sent her to work with the Defendant, who was a handyman, as a punishment. The Defendant "asked [her] to do something," and she refused. The Defendant confessed this incident to his wife before the victim had a chance to tell her. Although the victim's mother thereby became aware of the sexual abuse, no action was taken.

When the victim turned fifteen, she confided the abuse to a friend who ultimately revealed it. The victim acknowledged the abuse when her school's principal asked her about it. At that time, the victim went to live with her brother and her biological aunt in another state. The victim testified that after the abuse, she began to suffer from obsessive-compulsive disorder and that she could no longer trust father figures. She no longer had a good relationship with her mother because her mother had ignored the abuse. The victim stated that she was testifying to "speak up" for others who were the victims of abuse.

The victim's aunt testified that she did not know about the sexual abuse until 2015, when the victim came to live with her. She confirmed that the victim suffered from obsessive-compulsive disorder and extreme anxiety after the abuse. She testified that the

victim did not have anxiety "beyond what might be considered normal" prior to the abuse.

The Defendant testified that he currently lived in a trailer adjacent to his father's home. The Defendant's father was eighty-eight years old and needed help with some daily tasks, such as taking medication and bathing. The Defendant stated that there was no one else to help his father except in an emergency. The Defendant told the court that he was sorry he had caused the victim grief and that he hoped that she could learn not to hate him "because that – it's a bad thing." He was enrolled in a class for sexual offenders and had learned that he was not the victim. His wife had initiated divorce proceedings against him. He acknowledged that he had adopted the victim and then attacked her when she was eleven. He also acknowledged that his brother lived only a few miles from his father's home.

While the Defendant's argument at sentencing referred several times to the fact that this was an isolated incident, we note that the record as a whole does not support that contention. In asking the victim to describe the circumstances of the offense, the prosecutor asked the victim to "talk about the main event." The presentence report indicates that the Defendant acknowledged to police that he had touched the victim inappropriately on at least two occasions, in one of which he described giving her a back massage and then touching her buttocks. The presentence report relays a synopsis of the victim's interview with police in which she noted that the Defendant began giving her back massages and at one time pulled her pants down around the top of her thighs. Furthermore, a psycho-sexual evaluation of the Defendant in the presentence report contained a statement from the victim that the Defendant walked in on her showering and tried to make her hug him prior to the incident for which he was convicted. She told the Defendant on the day after the offense at issue that she would reveal the abuse if he touched her again.

Likewise, the Defendant asserted at sentencing that he was remorseful, but in his statement in the presentence report, he denied touching the victim's vagina and stated that the punishment he anticipated receiving was "too harsh." In her statement to the police, the victim related that the Defendant blamed her for the abuse, telling her it was her fault for wearing bikinis. The Defendant's psycho-sexual evaluation also stated that he admitted to having viewed pornography which depicted minors. The Defendant stated he was traumatized when his father murdered his mother in front of him in 1974.

The trial court noted that both the victim and the Defendant would be affected by the Defendant's actions for the rest of their lives. The trial court applied two enhancement factors: that the crime was committed to gratify the Defendant's desire for pleasure or excitement and that he abused a position of public or private trust. T.C.A. §

40-35-114(7), (14). The trial court found one mitigating factor, the Defendant's acknowledgment of guilt. T.C.A. § 40-35-113(13). The trial court determined that five years was an appropriate sentence, noting that the Defendant had obtained the termination of the parental rights of the victim's biological parents and then ultimately abused her. The trial court also denied alternative sentencing, finding that confinement was necessary to avoid depreciating the seriousness of the offense and was particularly suited to provide an effective deterrent to others. In making the finding, the trial court noted that "[i]t was a very disturbing presentence report." The Defendant appeals the length and manner of service of his sentence.

## ANALYSIS

On appeal, the Defendant asserts that the trial court started at the top of the sentencing range and that it erred in balancing the enhancing and mitigating factors. The Defendant also appears to assert that he was entitled to a presumption of probation.

## I. Sentence Length

This court reviews challenges to the length of a sentence under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentences that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. This court cannot reverse a sentence based on the trial court's failure to adjust a sentence in "light of applicable, but merely advisory, mitigating or enhancement factors." *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The trial court is "to be guided by — but not bound by — any applicable enhancement or mitigating factors when adjusting the length of a sentence." *Bise*, 380 S.W.3d at 706. Further, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* A sentence imposed by the trial court that is within the appropriate range should be upheld as long as it is "consistent with the purposes and principles of sentencing, as provided by statute." *Id.* The appealing party bears the burden of proving that the sentence was improper. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining "the specific sentence and the appropriate combination of sentencing alternatives," the trial court must consider: (1) the evidence at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable

mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. T.C.A. § 40-35-210(b).

The argument in the Defendant's brief regarding the length of the sentence is merely a quarrel with the trial court's weighing of the enhancement and mitigating factors. However, under *Bise,* "mere disagreement with the trial court's weighing of the properly assigned enhancement and mitigating factors is no longer a ground for appeal." 380 S.W.3d at 706. The trial court is free to choose a sentence within the proper range so long as the trial court's choice reflects an application of the purposes and principles of sentencing set out by statute.

Although not noted by either party, we observe that the trial court misapplied the enhancement factor that the Defendant committed the crime to gratify the Defendant's desire for pleasure or excitement because this factor is an element of attempted aggravated sexual battery. *State v. Paul Neil Laurent*, No. M2005-00289-CCA-R3-CD, 2006 WL 468700, at *11 (Tenn. Crim. App. Feb. 27, 2006). "By statute, an enhancement factor must be appropriate for the offense and not an essential element of the offense." *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002); *see* T.C.A. § 40-35-114. However, the trial court also properly found as a separate enhancement factor that the Defendant abused a position of trust. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. In *Bise,* the trial court misapplied the sole enhancement factor, but the appellate court nevertheless upheld the length of the sentences because they were within the correct range and were in keeping with the purposes and principles of sentencing. *Id.* at 708-09. Here, the trial court found that the Defendant abused a position of trust when he terminated the parental rights of the victim's biological parents and then subsequently sexually abused her. The Defendant was eligible for a sentence of three to six years. T.C.A. § 39-12-101(a); T.C.A. § 39-12-107(a); T.C.A. § 39-13-504(b); T.C.A. § 40-35-112(a)(3). The trial court did not abuse its discretion in imposing a five-year sentence.

## II. Alternative Sentencing

The Defendant next objects that he was denied alternative sentencing. Like determinations regarding sentence length, the grant or denial of alternative sentencing is reviewed for an abuse of discretion accompanied by a presumption of reasonableness when the sentencing decision reflects the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). The defendant bears the burden of

establishing suitability for probation and that probation will serve the ends of justice and the best interest of the public and the defendant. T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A defendant sentenced to less than ten years is eligible for probation unless the offense is excluded by statute. T.C.A. § 40-35-303(a). A standard offender convicted of a Class C felony, such as the Defendant in this case, is considered a favorable candidate for alternative sentencing in the absence of evidence to the contrary. T.C.A. § 40-35-102(6)(A). The court "shall consider, but is not bound by" this guideline. *Id.* § 40-35-102(6)(D).

In determining whether incarceration is an appropriate sentence, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1).

In *State v. Sihapanya*, the trial court based its denial of alternative sentencing on "combin[ing] the need to avoid depreciating the seriousness of the offense with the need for deterrence and the nature and circumstances of the offense." 516 S.W.3d 473, 476 (Tenn. 2014) (order, per curiam). The Tennessee Supreme Court accordingly did not apply the heightened standard of review used when a trial court denies probation solely on the need for deterrence or solely on the need to avoid depreciating the seriousness of the offense. *Id.*; *see State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) ("If the seriousness of the offense forms the basis for the denial of alternative sentencing, Tennessee courts have held that the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." (Quotations omitted)). Here, the trial court stated that it was basing its decision on the fact that "confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others." The trial court also referenced the nature and

circumstances of the offense. As in *Sihapanya*, these factors are supported by the record. *See Sihapanya*, 516 S.W.3d 473, 476.

In considering sentencing alternatives, the trial court must consider the evidence at the sentencing hearing, the presentence report, and the nature of the criminal conduct. T.C.A. § 40-35-210(b). While the Defendant pled guilty to the reduced charge of attempted aggravated sexual battery, the evidence in the record, which the trial court described as "very disturbing," supports the conclusion that the Defendant committed more than one completed aggravated sexual battery on his adopted daughter while she was under thirteen years old. The Defendant obtained custody of the victim, removing her from the guardianship of others who could have protected her from him. While the trial court's decision appears to be based on more than one ground, the trial court's finding that the presentence report was "very disturbing" supports the conclusion that it found that the crime to be especially shocking, reprehensible, offensive, and of an exaggerated degree. *Trotter*, 201 S.W.3d at 654. Considering that the conviction offense was attempted aggravated sexual battery, the record supports this conclusion. The trial court did not abuse its discretion in denying probation.

## CONCLUSION

Because we determine that the trial court did not abuse its discretion, the judgment is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE